GILLIAM and others *v.* M. McCORMACK and others.

(*Nashville.*   March 10th, 1887.)

MARSHALING SECURITIES.   *Successive mortgages.   Nature, and enforcement, of the equity to marshal.*

M. McCormick, owning three town lots—A, B, and C—gave six mortgages thereon, at different dates—the first covering the entire property, and the others, parcels thereof, less than the whole, as shown in the following diagram :

| LOT A. | LOT B. | LOT C. |
|---|---|---|
| Sixth mortgage to Annie Lawrence. | | |
| | | Fifth mortgage to Merritt & Ronaldson. |
| Fourth mortgage to Jane Gilliam. | | |
| | Third mortgage to Jas. McCormack. | |
| Second mortgage to McFarland. | | |
| First mortgage to McFarland. | | |

All the lots were sold, and their proceeds proved insufficient to pay all the mortgage debts.   Upon the controversy among the junior mortgagees as to application of the remaining proceeds of the lots after payment of the senior mortgages, the Court held :

Gilliam and others *v.* M. McCormack and others.

1. That the doctrine of marshaling securities is a *pure equity*, in no-wise depending on contract; and that the *general rule* regulating its administration and enforcement is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another—the former must seek satisfaction out of that fund which the latter cannot touch.

2. That, in a case like this one, the *equity* to marshal does not fasten itself upon the situation as it existed at the date of the execution of the respective mortgages, but upon the situation existing at the time its enforcement is invoked; and that this *equity* becomes a *fixed right* only from the time proper steps are taken to enforce it, remaining until then subject to defeat or displacement by the creation of subsequent liens on the property or funds.

3. That this *equity* to marshal securities will not be enforced to the prejudice of either the dominant creditor or third persons, or even so as to do an injustice to the debtor.

4. That as the result of the application of the above principles to the facts of this case, the several mortgages should be paid *pro rata*, in the order of their priority, out of the proceeds of the parcel or parcels covered by each.

Cases cited and approved: 18 Ohio, 428; 51 Md., 285; 31 Ark., 202; 23 Minn., 75; White & Tudor, L. Ca. in Eq. (4 Am. Ed.) Vol. II., Part I., 205.

Cited and disapproved: Conrad *v.* Harrison, 3 Leigh, Va. R., 576.

---

### FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. A. G. MERRITT, Ch.

R. McP. SMITH for Gilliam.

VERTREES & VERTREES for JAMES McCORMACK.

C. D. BERRY for Merritt & Ronaldson.

LURTON, J. The report of the Commission of Referees contains a full statement of the facts. The reasoning, as well as the conclusions, of Judge Caldwell, who prepared that report, being altogether satisfactory, is adopted and made a part of this opinion. It is as follows:

"These bills were brought to compel an application of the equitable doctrine of *marshaling securities.*

"The defendant, M. McCormack, owned three lots of ground—A, B, and C—in the city of Nashville, which he mortgaged to various creditors, as follows:

"*First*—A, B, and C, to McFarland, May 31st, 1877, to secure $1,000.

"*Second*—A and B, to McFarland, June 26th, 1877, to secure $6,996.55.

"*Third*—B, to James McCormack, June 8th, 1878, to secure $4,075.

"*Fourth*—A and B, to Jane Gilliam, July 31st, 1878, to secure $1,500.

"*Fifth*—C, to Merritt & Ronaldson, November 20th, 1878, to secure $1,671.66.

"*Sixth*—A and B, to Annie Lawrence, January 28th, 1879, to secure $1,160.

"There were other mortgages, which need not be mentioned.

"All the necessary parties were brought before the Court, and the three lots were sold under decree, and reports of sale confirmed. The amount realized for A was $8,660, for B $6,500, and for C $3,125. The total being less than the aggregate of

the secured debts, a loss must fall on some creditor; hence this contention.

"The Chancellor decreed that the costs and taxes accrued be paid *pro rata* out of the funds realized from the three lots respectively, and further, (1) that the whole debt of Merritt & Ronaldson be paid out of the net proceeds of lot C; (2) that the balance of such proceeds be applied in satisfaction of McFarland's debt secured by mortgage on A, B, and C; (3) that the residue of the latter debt, and the other debt of McFarland, be paid *pro rata* out of the net proceeds of A and B; (4) that the balance of the net proceeds of B shall be applied to debt of James McCormack; (5) that the balance of the net proceeds of A be used first in payment of Jane Gilliam's debt and then in payment of that of Annie Lawrence.

"This division of the funds paid all the debts mentioned in full, except those of Annie Lawrence and James McCormack.

"The latter only has appealed, and by his counsel insists upon a different distribution.

"It has been seen that McFarland and James McCormack have the three oldest mortgages; and, when the case is considered with reference to them alone, there is no difficulty. McFarland has a lien on three funds for one debt, and a lien on two of the funds for another debt, while McCormack has a lien on only one of the funds for his debt. The three funds are ample to pay the three debts. Then, as between these creditors, it is but a plain

case for the application of the familiar doctrine of marshaling securities—McFarland must first exhaust the two funds upon which he alone has a lien, and leave the third fund, on which they both have liens, for McCormack. Story's Eq. Jur., Sec. 633; Jones on Mortgages, Secs. 728, 875, 1628, and 1629.

"The same may be said in favor of any other creditor as between him or her and McFarland. But the case is not so simple as that. The lien rights and equities of each and all must be considered at the same time. McFarland must be preferred over all others, because he has a prior lien. The real contention is between the other creditors; mainly between McCormack on the one hand and Merritt & Ronaldson on the other. How does the case stand as to them? McCormack's mortgage is on lot B alone; that of Merritt & Ronaldson is on lot C alone; so that each has a lien on a single fund, and on that fund the other has no lien. The two funds are distinct; neither of the two creditors has a lien on two funds; neither of them has two securities. For these reasons it is manifest that the doctrine under consideration has no possible application as between McCormack and Merritt & Ronaldson, unless McFarland's liens on the two funds give it application.

"McCormack, from the date of his mortgage, had a right to compel McFarland to exhaust both A and C before subjecting B—that is, he had an equity against McFarland, but no interest in, or lien upon, A and C. While this equity existed,

and before any steps were taken to enforce it, Merritt & Ronaldson acquired a lien by mortgage on C. Unquestionably the lien of the mortgage is superior to the equity against McFarland, and as a consequence the right of Merritt & Ronaldson to satisfaction of their debt out of the proceeds of C is necessarily stronger than the right of McCormack to force McFarland to take the fund as a payment on the latter's debt.

"The lien of a mortgagee of land is superior to the equity of the mortgageor's vendor for purchase-money. For the greater reason is the lien of a mortgagee superior to the mere equity of a third person to compel another to take the mortgaged land by way of marshaling securities. Therefore, the contention of McCormack that McFarland should first take the proceeds of C cannot be maintained.

"This case cannot be properly decided alone on the doctrine invoked.

"Our solution of the case is this: The three funds should severally pay their proportionate part of McFarland's debt secured by mortgage on A, B, and C; then the remaining proceeds of A and B should proportionately pay the other debt of McFarland secured by mortgage on A and B. From the residue of the three funds payment should be made as follows: McCormack should receive the residue of the proceeds of B, on which he had a mortgage; Merritt & Ronaldson should be paid out of the residue of the proceeds of C, on which they had a mortgage; Jane Gilliam should receive

payment out of the residue of the proceeds of A, and the balance of that fund should be paid to Annie Lawrence, the two ladies having successive mortgages on A. They likewise had mortgages on B at the same time; but B's proceeds are previously exhausted by McCormack, a prior mortgageor. Such an order of distribution will give to every mortgage creditor the benefit of his or her security according to priority in time, which is eminently just and equitable to all.

"The result of the Chancellor's decree is substantially the same as we have indicated. The first debt of McFarland being small, that part of it chargeable upon the proceeds of C, by the rule of proportion we have stated, would leave more than enough of that particular fund to pay Merritt & Ronaldson. It being evident, then, that they should receive full payment, the Chancellor directed, in the first instance, that their debt be paid. That being done, the whole residue of the proceeds of C (and not simply its proportionate part) was first applied to McFarland's first debt—that secured by A, B, and C. To this extent the securities were marshaled in favor of the subsequent incumbrance of A and B, and McCormack got the benefit of it.

"Our view as to the rule that should govern such a case is sustained by *Green* v. *Ramage*, 18 Ohio, 428. The case of *Conrad* v. *Harrison*, 3 Leigh, Va. R., 576, seems to be an authority in conflict. Nevertheless, we have not a doubt as to the correctness of our conclusions.

"The decree of the Chancellor should be affirmed at the cost of the appellant."

In support of the conclusion contained in the report in favor of the *pro rata* payment of the several mortgages, in the order of priority, out of the proceeds of the parcels covered by each mortgage, we add certain suggestions which occur as additional reasons for declining to marshal these securities to the prejudice of the second mortgage on lot C, and of the third and fourth mortgages on lot A. The equitable doctrine of marshaling securities is a pure equity, and in nowise depends upon contract. The whole principle, as stated by Professor Pomeroy, is this:

"That a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only—as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another—the former must seek satisfaction out of that fund which the latter cannot touch." Pomeroy Eq. Jurisprudence, Sec. 1414.

Now, if in this case there were but two mortgages—one on three lots and the other on only one—the equity of marshaling would be applied, and the dominant creditor having a mortgage on all three of the lots would be required to first exhaust the two lots upon which the second mort-

gagee could not proceed. So, if there were but three mortgages, the first being on lots A, B, and C, the second, as is the case here, on lots A and B alone, and the third, as is likewise the fact, upon lot B alone, the securities would be so marshaled as to require the senior mortgagee to first exhaust lot C, upon which he alone could go, and thus leave lots A and B to be subjected by the two second mortgagees. Indeed, there would be no trouble in going further, and in behalf of the third mortgage, which rests upon lot B only, the two prior mortgagees might well be required to first subject lot A, upon which they alone could go. But this is not the situation of these securities at the time that the equity of marshaling is invoked. Before the third mortgagee had successfully invoked the marshaling in his favor, which we have shown could have been granted without prejudice to the rights or equities of any one, a *fourth* mortgage is executed, which is placed upon lots A and B, and a *fifth* is placed upon lot C. Now, when the *third* mortgagee asks to have the *first* mortgagee forced to subject lot C to his debt, the demand is resisted by the fifth mortgagee, who says this is to my prejudice; there was upon lot C—upon which alone I have a mortgage—but one mortgage senior to mine, and that ought to be satisfied *pro rata* out of the three lots upon which it rests, that my security may bear only its proportionate part of the prior burden. The situation has, therefore, changed from what it was

when the third mortgage was executed upon lot B alone.

The contention of the learned counsel representing this third mortgagee is that the common debtor could not, by the execution of another mortgage upon lot C, cut off or deprive the third mortgagee of the right he had, or, rather, might have had, if the doctrine of marshaling had been invoked at the time the third mortgage was made, or at any time before another mortgage was placed on lot C. The proposition contended for would amount to this: That if at any time the situation of several subsequent mortgagees is such that as between themselves such a marshaling of securities could have been invoked, by proper application to a court of equity, as would result in the satisfaction of the senior mortgages out of a fund which the junior mortgagee could not reach, whereby the fund upon which he could only go should be left for his satisfaction, that this inchoate equity cannot be disturbed, displaced, or defeated by any subsequent alienation or mortgage by the common debtor or mortgageor. This rule, if admitted, would result in elevating an inchoate equity to marshal assets or securities to the high plane of a lien. Yet it would be an incumbrance or lien of which a subsequent mortgagee would have no notice by record or otherwise. It would clearly be in antagonism to our registry laws.

This equity to have securities marshaled, if it can be called an equity until actually invoked, can-

not be of a higher order than the equity of the vendor. Yet the latter is defeated, according to our decisions, by alienation of the lands to a purchaser, to a mortgagee, and even to a trustee under an assignment to pay debts, before the actual filing of a bill to enforce the equity. A marked distinction exists between the cases holding lands sold subject to the lien of a vendor, or that of a mortgage or judgment liable for the discharge of such lien in the inverse order of alienation. In all such cases the parcels were all actually bound by *a lien* or *incumbrance*, of which the alienees had notice, either actual or constructive, and not by a mere equity, such as that to have a marshaling.

It follows, therefore, from this view of the question, that *the equity to marshal assets is not one which fastens itself upon the situation at the time the successive securities are taken; but, on the contrary, is one to be determined at the time the marshaling is invoked. The equity can only become a fixed right by taking proper steps to have it enforced; and until this is done it is subject to displacement and defeat by subsequently acquired liens upon the funds.* The qualification upon the doctrine of marshaling—that *marshaling will not be permitted to the prejudice of the third person,* whether wholly or only partially dependent upon this principle—is one well settled, and operates to defeat the contention of appellant.

Upon these two grounds the case of *Green* v. *Ramage,* 18 Ohio, 428, rests. That case was this:

W had a lien on lots 14 and 39, and G on 14, and H on 39, in this order of date. G contended [just as does the third mortgagee in this case] that as he had the right, before H took his second mortgage on 39, as between himself and W, to throw W on 39 first, therefore this right fastened itself into the situation so as to turn H's second mortgage on 39, when taken, into virtually a *third* mortgage.

The Court, after conceding that if there was nobody to be considered but W with two funds and G with only one of them, W would have to exhaust his exclusive fund before touching the common fund, added:

"In this case, however, there are three parties interested. If G compel W to exhaust lot 39 before he comes on lot 14, then G will have the benefit of the fund arising from lot 39, although he took no security on it. But H, by this arrangement, will be deprived entirely of this security on 39, although he took a mortgage on it. We think the rule cannot be applied in a case of this kind. The principle is one established for the purpose of securing to parties the rights to which, upon the principles of natural equity, they are entitled. To deprive H in this manner of his security would be manifestly unjust."

So in the case of *Leib* v. *Stribling,* 51 Md., 285, S mortgaged to R five lots. Afterward four of these lots became incumbered with a mechanic's lien, and the fifth lot by a second mortgage to C.

The contention was that S should first exhaust the fifth lot upon which C had his mortgage, so as to disincumber the four lots upon which the mechanic's lien was an incumbrance secured to that of S. This was refused upon the ground that the assets would not be marshaled to the prejudice of C, who had no notice of the equity of the complainant.

In the case of *Marr* v. *Lewis*, 31 Ark., 203, the facts were that A held a mortgage upon two tracts of land; B also held a mortgage on one of them. In a proceeding to foreclose, B sought to compel him to exhaust the tract not embraced in his mortgage first. The widow of the mortgageor, who was also a party, claimed a homestead in the latter tract. Held: that by reason of the widow's equity the securities should not be marshaled. The rule as laid down by the Court in that case was this:

" When one creditor has a security upon two funds, another having a security on one of them, may, if necessary to the protection of his security, compel the other to resort to the fund not embraced in it, if it can be done *without prejudice to the other creditor, or injustice to the common debtor or third person having interest in the fund.*"

In the case of *McArthur* v. *Martin*, 23 Minn., 75, the Court said:

" Where A holds a security upon two tracts of land, one of which is a homestead, and B holds a security only upon one not a homestead, A will not be compelled to exhaust the homestead tract first in order to leave the other tract for B."

39

The English editors of White & Tudor's Leading Cases in Equity, 4th Am. Ed., Vol. II., Part I., 205, say:

"Marshaling is not enforced to the prejudice of third persons. Thus, in *Averall* v: *Wade*, L. & G., t., Sugden, 252, where a person, being seized of several estates, and indebted by judgments, settled one of the estates for a valuable consideration, with covenant against incumbrances, and subsequently acknowledged other judgments, it was contended by the subsequent judgment creditors that, as they only affected the unsettled estates, on the principle in *Aldrich* v. *Cooper*, as they had only one fund, they had a right to compel the prior judgment creditors who had two funds—the settled and unsettled estates—to resort to the settled estates; or, at any rate, that the settled estates ought to contribute to the payment of the prior judgments. Lord Chancellor Sugden, however, held that the subsequent judgment creditors had no equity to compel the prior judgment creditors to resort to the settled estates. On the contrary, that the prior judgments should be thrown altogether on the unsettled estates, and that the subsequent judgment creditors had no right to make the settled estates contribute; observing, after a close examination of *Aldrich* v. *Cooper*, that upon the whole of the case you will find Lord Eldon, in the application of the principle, '*carefully avoids dealing with the rights of third persons.*' So in *Barnes* v. *Racster*, 1 Y. & C. C. C., 401 [a case almost identical with

the one under consideration], Racster, being seized of Foxhall coppice and a piece of land noted on plan of the estate as No. 32, mortgaged, in 1792, Foxhall to Barnes; in 1795, Foxhall to Hartwright; in 1800, Foxhall and No. 32 to Barnes; and in 1804, Foxhall and No. 32 to Williams; the subsequent incumbrancers took with notice. It was held by Sir Knight Bruce, R. C., that the Court *ought not, as against Williams,* to marshal the securities. His Honor said that, circumstanced as the case was, Hartwright and Williams stood, with regard to the matter in dispute, on an equal footing; that Barnes ought to be paid out of the respective proceeds of No. 32 and Faxhall, *pari passu* and ratably, according to their amounts; that the residue of the proceeds of Foxhall ought to be applied toward paying Hartwright, and that the residue of the proceeds of No. 32 ought to be applied toward paying Williams—a conclusion, as he considered, entirely in accordance with the principles on which *Larry v. Duchess of Athol, Aldrich v. Cooper,* and *Averall v. Wade,* were decided."

These cases, and the sound equity upon which they are manifestly founded, sustain the proposition that *marshaling is a pure equity, and does not at all rest upon contract, and will not be enforced to the prejudice of either the dominant creditor, or third persons, or even so as to do an injustice to the debtor.* We are not disposed to extend the doctrine so as to affect the equities or legal rights of third persons.

The case in 3 Leigh, Va., 576, so far as we have been able to discover, stands alone. It is not supported by authority, and we are not content with its reasoning. The other cases relied upon by counsel for appellant all seem to be cases of sales of lands actually incumbered by an express lien, and are not in conflict with the views expressed by us.