T. C. NEWBY, *Appellant,* v. MARTHA FOX et al. (J. J. NORTON et al., *Appellees;* THE EL DORADO NATIONAL BANK OF EL DORADO, KANSAS, *Appellant*).

No. 18,324.

SYLLABUS BY THE COURT.

1. MARSHALING SECURITIES—*Rights of Senior and Junior Mortgagees.* The owner of a tract of land, who gives a mortgage upon it and then conveys it in consideration of the buyer assuming the mortgage debt and giving him a note for the rest of the purchase price, secured by a second mortgage on a part of the tract, is not precluded by the fact that he is personally liable for the payment of the first mortgage from requiring a marshaling of securities, so that the parcel of land on which he has no lien shall be appropriated to the

payment of the first mortgage before the remainder of the tract is resorted to for that purpose.

2. —— *Same.* In the situation stated the right to a marshaling of securities is not defeated by the sale of the tract which is subject only to the first mortgage to a purchaser for value, who from the record has notice of both mortgages, and of the assumption of the first mortgage debt by the maker of the second mortgage, although such sale is made before such right has been asserted.

3. —— *Same.* In that situation the rights of one who has purchased the first mortgage are not diminished by the fact that such purchase was made at the instance and for the benefit of the owner of the tract covered only by that mortgage.

Appeal from Butler district court. Opinion filed July 5, 1913. Reversed.

*V. P. Mooney, E. D. Stratford, George J. Benson,* and *T. A. Kramer,* all of El Dorado, for the appellants.

*C. L. Aikman,* of El Dorado, for appellee Charles Bradshaw.

The opinion of the court was delivered by

MASON, J.: T. C. Newby owned a farm containing 520 acres. He procured a loan upon it for $4500, executing to the Warren Mortgage Company a mortgage and a commission mortgage, which will be spoken of as one instrument. Later he sold it to J. J. Maxey, who in the deed assumed the payment of the existing mortgage on the entire tract, and also gave Newby a note for $10,100, secured by a second mortgage upon 360 acres of it. Maxey then sold the land to W. F. Young who sold it to J. J. Norton. Neither Young nor Norton became personally liable for any part of the mortgage debt but each accepted a deed reciting that the land was subject to both mortgages. Norton sold to Charles Bradshaw the 160 acres that were not covered by the second mortgage, the deed providing that this tract should be subject to 36 per cent of the

first mortgage.   Both mortgages being in default, Newby began an action for the foreclosure of that owned by him, making Charles Hartronft, who had purchased the first mortgage, a party.   A decree was rendered for the foreclosure of both mortgages.   The two tracts, that owned by Norton and that owned by Bradshaw, were ordered to be sold separately, 64 per cent of the first mortgage debt to be paid from the proceeds of the former, and the remaining 36 per cent from the proceeds of the latter. · Newby appeals, his chief contention being that the entire proceeds of the tract on which he had no lien should have been appropriated, so far as necessary, to the payment of the first mortgage, which covered both tracts, before the other was resorted to for that purpose.

The principle which the appellant invokes has been thus stated :

"The equitable remedy of marshaling securities, with that of marshaling assets, depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund.   The general rule is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only, as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another, the former must seek satisfaction out of that fund which the latter can not touch." (4 Pomeroy's Equity Jurisprudence, 3d ed., § 1414; 19 A. & E. Encycl. of L. 1256.)

"The doctrine of marshaling assets and securities is that where a creditor has a lien on two funds in the hands of the same debtor, and another creditor has a lien on one of them only, equity, on the application of the latter, will compel the former to make his debt out of that fund to which the latter can not resort."   (26 Cyc. 927.)

Here Hartronft and Newby each have a personal claim against Maxey, who by the assumption of the first mortgage became directly indebted to Newby.

Hartronft's claim is secured by a first lien on the tract owned by Bradshaw and also on that owned by Norton. Newby's claim is secured only by a second lien on the Norton tract. Newby has a right to require that Hartronft shall look first to the Bradshaw tract, unless this right is defeated either (1) by the fact that he is personally liable on the debt secured by the first mortgage, or (2) by the fact that the Bradshaw tract is no longer owned by Maxey, but has been bought and paid for by Bradshaw. Hartronft has no real concern in the matter. His security is abundant, and in any event he can suffer no prejudice from being required to resort first to one tract rather than to the other. The controversy is between Newby and Bradshaw, and turns upon the question—Which has the superior equity?

It has been said that a marshaling of securities can not be required by a "single creditor" (that is, one having a lien only on a single fund) who is himself bound to the "double creditor" (the one having a lien on both funds). (19 A. & E. Encycl. of L. 1286, note 7; 26 Cyc. 937, note 46.) In the case cited in each of the notes referred to Lord Westbury said:

"The doctrine of marshalling is no more than this, that where one person has a clear right to resort to two funds, and another person has a right to resort to one only of these two funds, the latter may say that, as between himself and the double creditor, that double creditor shall be put to exhaust the security upon which the single creditor (if I may so call him) has no claim. But it would be utterly impossible to apply that doctrine to a case where the single creditor is in truth himself bound to the party entitled to the other security." (*Dolphin v. Aylward,* 4 Eng. & Irish App., L. R., 486, 505.)

There, however, the situation was such that the "single creditor" had no right to require the debt he owed to be made out of the property, as appears from the statement: "Nor is any contract taken that the

land shall be the primary  .  .  .  fund for the payment of these debts." (p. 504.) The intimation is clear that if the primary liability had been against the property, the fact that the "single creditor" was also personally liable would not have destroyed his right to ask a marshaling of securities. "Where land is sold subject to a mortgage, the effect, as between the grantor and the grantee, is to make the land the primary fund for the satisfaction of the incumbrance." (27 Cyc. 1343.) Here Newby sold the land to a buyer who assumed the mortgage debt. Young and Norton each took subject to the mortgage. While the deed from Norton to Bradshaw purported to convey title to the 160 acres subject only to 36 per cent of the first mortgage, this was consistent with the theory that Newby's personal liability was secondary to the lien on the land. And doubtless no arrangement between the grantor and grantee in that instrument could reestablish the primary liability of Newby. He, therefore, owed no duty to Bradshaw to pay the first mortgage, and his obligation to Hartronft was not fatal to his claim for a marshaling of securities.

If proceedings to enforce the two mortgages had been begun while Maxey still owned the land Newby would clearly have had the right to insist that the tract on which he had no lien should be first exhausted. To determine how far his rights in this respect were affected by the sale to Bradshaw involves the consideration of a question concerning which there is some conflict in the authorities. After noting one aspect of this conflict, the author of the article on "Marshaling Assets" in the American and English Encyclopædia of Law continues:

"Subject to the foregoing qualifications it may be stated as a general rule that the right of the junior creditor as against the common debtor is practically absolute, and consequently prevails against all those claiming under the debtor by lien or title subsequent

21—90 KAN.

in time. Generally, however, the equity will not be enforced to the prejudice of one having an equal or superior right. Subsequent purchasers or incumbrancers with actual or record notice of the facts giving rise to the equity have no such superior standing, however, as to enable them to prevent the application of the doctrine." (19 A. & E. Encycl. of L. 1260.)

Where a condition has arisen under which the holder of a mortgage on a part of a tract, the whole of which is covered by a prior mortgage, would have a right to invoke the doctrine of marshaling securities against the first mortgagee and the common debtor, this right continues against any one who acquires an interest in the part of the tract not covered by the second mortgage in any of the following ways: by virtue of an attachment or judgment lien; by a voluntary or fraudulent conveyance; by purchase with actual or constructive notice that the second mortgagee has already asserted such right. (See context to last citation, and notes.) There are cases holding that the right may be successfully invoked against one who has purchased and paid for the tract which is subject only to the first mortgage, with notice from the record of the existence of the second mortgage; this is on the theory that such purchaser has notice of the facts which give the right, and that with such notice he can acquire no more advantageous position than that occupied by his grantor, and therefore that he takes title subject to the same equities. (*Conrad v. Harrison & al.,* 3 Leigh [Va.] 576; *Robeson's Appeal,* 117 Pa. St. 628, 12 Atl. 51; *Boucher v. Smith,* 9 Grant's Ch. Rep. [Upper Canada] 347.) The weight of authority, however, seems to support the contrary view, which is elaborated in an opinion by Judge Horace H. Lurton in *Gilliam and others v. M. McCormack and others,* 85 Tenn. 597, 4 S. W. 521, where the prior decisions are carefully reviewed. It was there said:

"The proposition contended for would amount to this: That if at any time the situation of several sub-

Newby v. Fox.

sequent mortgagees is such that as between themselves such a marshaling of securities could have been invoked, by proper application to a court of equity, as would result in the satisfaction of the senior mortgages out of a fund which the junior mortgagee could not reach, whereby the fund upon which he could only go should be left for his satisfaction, that this inchoate equity can not be disturbed, displaced, or defeated by any subsequent alienation or mortgage by the common debtor or mortgagor. This rule, if admitted, would result in elevating an inchoate equity to marshal assets or securities to the high plane of a lien. Yet it would be an incumbrance or lien of which a subsequent mortgagee would have no notice by record or otherwise. It would clearly be in antagonism to our registry laws. . . . It follows, therefore, from this view of the question, that *the equity to marshal assets is not one which fastens itself upon the situation at the time the successive securities are taken; but, on the contrary, is one to be determined at the time the marshaling is invoked. The equity can only become a fixed right by taking proper steps to have it enforced; and until this is done it is subject to displacement and defeat by subsequently acquired liens upon the funds."* (pp. 606, 607.)

This reasoning is very persuasive, but if the conclusion is accepted it does not necessarily determine the exact question here involved. The rule that as between the original parties the mortgagee of a part of a tract may require the holder of a prior mortgage upon all of it to proceed first against that not covered by the second mortgage is manifestly fair. It does no injury to one creditor and confers a benefit on the other, while the common debtor can not be heard to complain. Whether it should be applied against new parties depends upon their comparative equities. (26 Cyc. 931.) One who acquires title through the debtor without parting with value—as a judgment creditor or a grantee in a voluntary conveyance — can not thereby gain any superior standing. Even a purchaser for value, who becomes such with notice of a proceed-

ing to enforce the right to have the securities marshaled, must be deemed to have acted at his peril. But it might unduly extend this merely equitable right to allow its enforcement against one who has bought and paid for the singly mortgaged land, knowing, to be sure, of the existence of the two mortgages, but having no particular reason to anticipate that the doctrine of marshaling securities will ever be invoked. The present case, however, is affected by a special feature of the relation between Newby and Maxey. The principle followed in the Tennessee case, with the reason upon which it is based, has been given this expression:

"The equity of marshalling arises where the owner of property subject to a charge has subjected it, together with another estate, to a paramount charge, and the estate thus doubly charged is inadequate to satisfy both the claims. . . . The equity is apparently not binding on the debtor's alienee for value, notwithstanding that he may have taken with notice of the facts, unless his interest were acquired after the institution of a suit. For although the ordinary rule is, that an alienee with notice is bound by all equities which bound his alienor, yet there is a distinction in regard to this particular equity, because the omission of the creditor to take an express collateral charge raises a presumption that he meant to leave the equity defeasible, and to continue the owner's power of dealing with the second estate for value, unfettered by his claim. It is otherwise if the debtor, on creating the single claim, covenants to satisfy the paramount charge out of the other estate, or fraudulently conceals its existence. For then a purchaser taking with notice of the covenant or concealment will be bound by the same equity as the debtor himself." (Adams on Equity, 8th ed., pp. 271, 273.)

The general rule as thus stated applies to the ordinary case where the owner of land first mortgages all of it to one creditor, and then mortgages a part of it to another. The mortgagor gives the second mortgagee no assurance that he will pay the first mortgage, or that the land covered by the second mortgage shall be ex-

onerated from liability upon the first. Equity does not read such as assurance into their contract, but merely as a matter of fairness requires the first mortgage to be paid out of the tract not covered by the second. Here, however, Maxey specifically agreed that he would pay not merely the second mortgage debt, but also the first. He thereby bound himself that the first mortgage should be paid without recourse upon the tract mortgaged to Newby—in effect that the other tract should be first exhausted. This obligation being essentially contractual, could not be affected by the transfer of the singly encumbered tract. All grantees claiming under Maxey had notice from the record of his assumption of the first mortgage debt (*Knowles v. Williams,* 58 Kan. 221, 48 Pac. 856), and were bound by the implied agreement to exonerate the singly mortgaged tract from liability therefor.

A very similar situation arises where several portions of a mortgaged tract are successively conveyed to different grantees, under an actual or virtual agreement that the grantor shall pay off the lien. In that case the parcels conveyed are chargeable in the inverse order of alienation (19 A. & E. Encycl. of L. 1273; 27 Cyc. 1307), and the rule is held not to be affected by the subsequent transfer of any of the portions sold (19 A. & E. Encycl. of L. 1275). The equity arising from this situation is stronger than that ordinarily requiring the marshaling of securities. It really rests upon contract. The mortgagor who conveys a part of the mortgaged premises by warranty deed undertakes that the buyer shall be saved harmless from the mortgage—that the tract retained shall bear the entire burden and that the tract sold shall be exonerated. The right to the enforcement of this understanding is essentially contractual and ought not to be disturbed by

subsequent transfers of the property. This distinction was noted in the Tennessee case, where it was said:

"A marked distinction exists between the cases holding lands sold subject to the lien of a vendor, or that of a mortgage or judgment liable for the discharge of such lien in the inverse order of alienation. In all such cases the parcels were all actually bound by *a lien* or *incumbrance,* of which the alienees had notice either actual or constructive, and not by a mere equity, such as that to have a marshaling." (*Gilliam and others v. M. McCormack and others,* 85 Tenn. 597, 607, 4 S. W. 521.)

Indeed, the whole practice of charging separate parcels of a mortgaged tract (when conveyed successively to different persons by deeds in which the grantor undertakes to pass a clear title) in the inverse order of alienation, rests upon the theory that he who buys one parcel, knowing that another has already been sold, stands on no better footing than his grantor, and must submit to his own land being appropriated to the payment of the lien before that previously deeded is resorted to. This is essentially the situation here presented. Maxey at one time owned the land, all of which was subject to a first mortgage. He had given a second mortgage to Newby on a part of it, and had specifically agreed with Newby to pay the first mortgage debt. The title which Bradshaw subsequently acquired, through Young and Norton, to the tract not covered by the second mortgage, was carved out of Maxey's interest, and was subject to the same equities. If Maxey had deeded to Newby the tract covered by the second mortgage, in satisfaction of the note thereby secured, and had then conveyed the rest of the land to Bradshaw, directly or through others, Newby's equity would be directly within the protection of the rule regarding the inverse order of alienation. The fact that Newby held a mortgage on the parcel in which he was interested, instead of a deed, does not lessen his claim, since the essential element is present of a guaranty by

the owner of the land that he shall be saved harmless from the first mortgage. That this view accords with the opinion in the Tennessee case appears from what was later said by the supreme court of that state:

"If the person who ought to pay the debt has conveyed different parcels of land bound for its payment, at several times to *bona fide* purchasers, as between such purchasers, the lands are chargeable in the inverse order of their alienation. . . . . It will . . . be seen that, though adopted by the Courts without the aid of a statute, yet it [the rule] has been so long established, and so uniformly applied, that it may well be regarded as a rule of property in this State. . . . The true foundation of the doctrine is in the equities subsisting between the vendor, or mortgagor, and his grantee of a part of the premises subject to the superior lien. Wherever a portion of lands so subject is conveyed by a warranty deed that is properly registered, and a portion is retained by the grantor, as between himself and his grantee, that part retained becomes in equity a primary fund for the discharge of this superior lien. As is well expressed by Mr. Pomeroy, in section 1224, third volume of his work on Equity Jurisprudence, 'the form of the deed shows that the grantee not only assumed payment of no portion of the mortgage debt, but did not buy his parcel even subject to the mortgage; and the entire burden was, therefore, left upon the portion of land remaining in the ownership of the mortgagor. Whatever be the rights of the mortgagee to resort to either or both of the parcels, it is plainly the equitable duty of the mortgagor to assume the whole debt, and thus to free the grantee's parcel from the lien. . . . The doctrine being thus established that the grantee obtains an equitable priority as against the mortgagor, and the portion of the premises left in the mortgagor's hands is primarily chargeable with the whole mortgage, the inference is natural, if not necessary, that the same burden follows this portion when subsequently conveyed by the mortgagor to the second grantee." (*Meek v. Thompson,* 99 Tenn. 732, 735-737, 42 S. W. 685.)

It can not be contended that Newby in failing to have Maxey's note to him secured by a mortgage on the

entire farm expressed a willingness that the tract which was afterwards conveyed to Bradshaw might be disposed of by Maxey without any regard to his rights. What motives actuated Newby and Maxey in making their contract is not a matter of inquiry. The contract made, even when interpreted as giving full force to Newby's equity of marshaling the securities, did not place Maxey in the same situation as though he had given a mortgage for the $10,100 upon the entire 520 acres. He was at liberty by paying the first mortgage to free the 160-acre tract absolutely from all lien.

The suggestion is made that the doctrine of marshaling securities was not rightfully invoked because proof was not made that Newby's lien was insecure. There was sufficient evidence however to that effect, and in any event if Newby's claim is actually secure the order regarding the marshaling of securities can work no prejudice to the other parties.

The appellant also maintains that Hartronft bought the first mortgage at the instance of Bradshaw to have this mortgage handled in such a manner as to be most beneficial to his own interest. The claim is made that this arrangement resulted in Newby's mortgage becoming a first lien. No reason is perceived why such result should follow.

The El Dorado National Bank has a claim upon the second mortgage, and has also appealed from the judgment, but for the purpose of the questions here involved its interests are the same as those of Newby, and no separate statement of them is required.

The judgment of the district court is modified so as to require all the proceeds of the Bradshaw tract to be devoted to the payment of the first mortgage before any part of the proceeds of the Norton tract are applied to that purpose. The necessary change of language will be indicated in the mandate.