AMERICAN TRUST COMPANY, EXECUTOR, COMPLAINANT, APPELLEE, *v.* MARY P. WADDLE *et al.*, DEFENDANTS, APPELLANTS.

*(Nashville,* December Term, 1930.)

Opinion filed April 4, 1931.

HILL MCALISTER and E. J. SMITH, for complainant, appellee.

NORMAN FARRELL, for defendant, appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed to administer the insolvent estate of Hugh M. Waddle. This appeal presents the question of

the disposition of the proceeds realized from the sale of certain real estate, after satisfaction of mortgages thereon.

It appears from the stipulation of facts that Waddle was the owner in his own right of four parcels of land numbered in the record, 2, 3, 4 and 5. He also owned as tenant by the entirety with his wife, another tract, numbered 1. He encumbered all of the five parcels by two mortgages for an aggregate of $11,500, his wife joining and waiving homestead and dower. He died December 4, 1928. Insolvence of his estate was suggested January 18, 1929, and this bill was filed February 5th following.

None of the mortgages or other debts of Waddle were the wife's. She joined in the making of the mortgages only for the husband's accommodation and became his surety. The Master appraised the aggregate value of the five parcels at $14,600, placing No. 1 at $1500, No. 2 at $5400 and Nos. 3, 4 and 5 jointly at $7,700; and he realized at private sale thereof a total of $13,100, selling No. 2 separately for $4,500, and Nos. 1, 3, 4 and 5 jointly for $8,600. No separate bid for No. 1 was received. After discharging the mortgage liens with interest, etc., there remained the sum of $924.33, the disposition of which is here involved. The Chancellor approved the acceptance of the private offers of purchase of the lands on the foregoing terms and his decree of confirmation concludes as follows:

"The widow Mary P. Waddle, through her attorney, Norman Farrell, expressly requests that said report be confirmed and agrees to join in the deed to the purchaser to be executed in accordance with the terms of said offer.

"Said funds will be paid into the hands of the Clerk and Master but all questions relating to its distribution are reserved for further orders and *especially* the question as to the right of the widow to have the mortgage on the Keith Avenue house and lot discharged out of the proceeds of the sale of the other lots so that she receive the proceeds of the sale of said lot without deduction."

Thereafter, on the petition of Mrs. Waddle and the stipulation of facts, the Chancellor held her entitled to but 15/130 of the net proceeds of $924.33, or $106.65, and that for the balance of her claim of $1500, or $1,395.45, she was a general creditor only, on the theory that as No. 1, her parcel, had been appraised at $1500, and as the five tracts realized altogether $13,100, her share of the net proceeds above the mortgages was but 15/130 of this sum. This is assigned as error.

It is insisted for Mrs. Waddle that on the death of the husband the entire ownership of No. 1 passed to her, that she was a surety to the extent of her parcel of land included in the mortgages of the husband, that she would have been entitled as against the mortgage creditor to have the parcels owned by the husband first sold, that her consent to the court sale was on express reservation of this equitable right to receive any excess above the mortgage debts up to the amount of the ratable value of her parcel, and that this right was superior to that of general unsecured creditors of her husband's estate.

It is well settled that where two joint owners of property convey it to secure the debt of one of them, the other assumes in the transaction the attitude of surety for the debt to the extent of the value of his interest in the property thus conveyed. *Foy* v. *Sinclair*, 93 Tenn., 295. And in the case cited this Court extended the rule

to judgment creditors of the surety. Other cases to the same effect are cited in the Note in 37 A. L. R., p. 1265, et sequi.

But, the rule is that the rights of judgment creditors of the principal mortgage debtor are subject to those of a surety to have the proceeds of lands of his principal included in a mortgage which embraces the lands of the surety first applied to the extinguishment of the mortgage debt. "A judgment lien amounts to but a security against subsequent purchasers and encumbrances, and can only operate on the interest which the debtor had at the time of its rendition." *Robbins-Sanford Mercantile Co.* v. *Johnson,* 166 Ark., 330, 37 A. L. R., 1258.

If, as shown by the authorities cited, not even creditors who have fastened liens by contract or judgment on the mortgaged property of the principal subsequently to the creation of the suretyship relationship by a joint mortgaging of one's property for the debt of another may deprive the surety of his prior right of marshalling, then certainly general and unsecured creditors can stand on no higher ground.

The theory of the Administrator is thus stated in the brief:

"On the filing of the original bill in this cause, the assets of the estate of Hugh M. Waddle became a trust fund, and that thereafter the equity which Mrs. Waddle had to require her husband's property to be taken before her own was taken for the payment of his debts, could not be asserted, for the reason that the recognition of such equity would deprive the creditors of this trust fund in which, by the filing of the original bill under the statute aforesaid, they are entitled to share ratably."

Counsel rely on *Gilliam et al.* v. *McCormick et al.*, 85 Tenn., 597. The facts of that case were not as here. That contest was between various mortgage liens on the parcels of land involved. The expression quoted from that opinion to the effect, "that marshalling is a pure equity, and does not at all rest on contract, and will not be enforced to the prejudice of either the dominant creditor, or third persons, or even so as to do an injustice to the debtor." And, concluding, "we are not disposed to extend the doctrine so as to affect the equities or legal rights of third persons," cannot be construed as applicable to the facts now before us. We have here no "third persons" asserting special legal rights or equities touching these particular mortgaged parcels of land. None of these general creditors have fastened claims against this land, either as purchasers, mortgagees, or holders of judgment or other liens. Unless the surety may assert her right to marshall against merely *general* creditors, then under what conditions could the doctrine be given application? Nor can we agree that the filing of the bill impounds the proceeds of the sales of this mortgaged property above the mortgage debt as a trust fund in any sense that cuts off the rights of Mrs. Waddle. Her rights fastened upon and relate back to the death of the husband. The suggestion of insolvency of his estate came later, and later still the bill was filed. And she consented to the sale on condition that her rights were reserved. In response to the insistence of counsel for Mrs. Waddle that her equity was fixed at the time she put in her estate for her husband's debt; and that, "the insolvency proceedings only gave her husband's general creditors a lien or equity long afterwards," it is urged that in the opinion in *Gilliam* v. *McCormick, supra,* it

was expressly denied that the equity to marshall assets rests on the plane of a lien—that such a lien or encumbrance would be one of which subsequent mortgagees would have no notice by record, or otherwise—clearly "in antagonism to our registration laws."

No such claim is asserted here. Rights of subsequent mortgagees, other liens, or other "third parties," are not involved. If in any sense or degree any of these general creditors gave credit on the faith of' the decedent's equity in this mortgaged property, they were charged with record notice of the title, interests and rights of Mrs. Waddle in one of the parcels of land. Moreover,. while the claim here made for Mrs. Waddle may be said to find support in the doctrine of marshalling, referred to as a "pure equity," it rest directly on the well established rules governing the relationship of principal and surety. The Annotator in 37 A. L. R., p. 1264, cites *Gresham* v. *Ware,* 79 Ala., 192, for this statement of the rule:

"Such right of the surety to have his property exonerated by the antecedent appropriation of the property of the principal is founded on the equitable principle that a debt shall be charged on the person or estate primarily bound,—an equity not dependent on contract, but growing out of the relation of principal and surety, and resting on natural justice.

"The court will always protect the interest of the surety where it can be done without prejudice to the creditor's right to have his debt paid, since, whatever the form of the instrument by which the principal and surety become bound, it was never the intention of the parties that the surety should, in the first instance, pay the debt."

■ We are unable to escape the conclusion that Mrs. Waddle is entitled to be paid the net proceeds of the mortgage lands up to the proportionate value of the appraisal as a whole which the appraisal placed on her property bears to the total net sum realized from the sale.

While it is urged that the record fails to show with sufficient definition the relative value of parcel No. 1, or the exact proportionate price it brought at the sale, we think the report of the Clerk and Master can be fairly treated as a finding of this value. Indeed, the decree of the learned Chancellor quite apparently so recognized it and without objection when he fixed the proportionate claim of Mrs. Waddle at 15/130 of the whole.

The decree must be reversed and the cause remanded for further proceedings consistent with this opinion.