In re **PAYNE & HADDOCK, INC.,** Debtor.

**Thomas E. RAY, Trustee, Plaintiff,**

v.

**AMERICAN NATIONAL BANK & TRUST COMPANY, Defendant.**

**Bankruptcy No. 1–87–01803.**

**Adv. No. 1–87–0227.**

United States Bankruptcy Court, E.D. Tennessee.

Dec. 23, 1988.

Thomas E. Ray of Ray & North, P.C., Chattanooga, Tenn., for plaintiff.

Shelley D. Rucker of Miller & Martin, Chattanooga, Tenn., for defendant.

### MEMORANDUM

RALPH H. KELLEY, Chief Judge.

This adversary proceeding raises a complicated question about the right of a junior lienholder to require the holder of a senior lien to marshal its collateral.

The defendant, American National Bank, made a loan to the debtor secured by equipment and accounts receivable. The debt currently is $25,540.66. The bank made the debtor a second loan secured only by accounts receivable. The second secured debt now totals $149,477.69.

The first security agreement did not include an "other debts" provision that would have made the equipment and accounts receivable secure the second loan. The second security agreement did not include a provision that the second loan was secured by any collateral for other debts. As a result, the equipment secures only the first

debt to the bank. Of course, the accounts receivable secure both the first and the second debt to the bank.

The plaintiff is the trustee in bankruptcy. He claims a second lien on the equipment and a third lien on the accounts receivable by virtue of his rights under Bankruptcy Code § 544(a) as a hypothetical judgment lien creditor of the debtor. Bankruptcy Code § 544(a) provides that the trustee in bankruptcy has the rights under state law of a person who perfected a judgment lien on the date of bankruptcy against all the debtor's property that could be subjected to a judgment lien under state law. 11 U.S.C.A. § 544(a)(1) & (2).

The trustee does not seek to avoid either security interest. He wants the court to order the bank to divide the money in a way that will benefit the bankruptcy estate.

If the trustee did not have a lien on the equipment, the bank would collect the first debt in full by taking all the $20,500 from the equipment and $5,040.66 from the accounts receivable. This would leave $65,339.44 from the accounts receivable; all of it would be applied to the second secured debt, which is almost $150,000. The trustee would not receive anything.

The trustee argues that Tennessee law does not allow this. According to the trustee, the bank cannot take all the proceeds of the equipment to pay its first debt because he has a second lien on the equipment. The trustee argues that the first debt must be paid proportionally from the proceeds of the equipment and the accounts receivable. Since the equipment produced 22.55% of the total proceeds from both the equipment and the accounts receivable, then the equipment proceeds should be used to pay 22.55% of the first debt, and the accounts receivable should pay the remaining 77.45% of the first debt:

Equipment
$20,500 − ($25,540.66 × 22.55%)
= $20,500 − $5,549.42
= $14,750.58 Remaining proceeds

Accounts Receivable
$70,389.10 − ($25,540.66 × 77.45%)
= $70,389.10 − $19,781.24
= $50,607.86 Remaining proceeds

Since the second debt is secured only by the accounts receivable, the $14,750.58 remaining from the equipment would be paid to the trustee.

In order for the trustee to prevail, three questions of law must be answered in his favor:

Under Tennessee law, can a judgment lien creditor require marshaling as proposed by the trustee?

Assuming Tennessee law allows a judgment lien creditor to require marshaling as proposed by the trustee, does the trustee in bankruptcy also have that right under his status as a hypothetical judgment lien creditor?

Assuming both the above questions are answered "yes" in the trustee's favor, does Tennessee law require the money to be divided as the trustee proposes?

The court will address the narrowest legal question, the third question above: assuming the trustee is entitled to marshaling, does Tennessee law require the money to be divided as proposed by the trustee?

The trustee finds support for his argument in *Gilliam v. McCormack*, 85 Tenn. 597, 4 S.W. 521 (1887).

In *Gilliam v. McCormack* the first three mortgages were as follows:

| Mortgage | Collateral |
| --- | --- |
| 1 | A, B, & C |
| 2 | A & B |
| 3 | B |

These three mortgages by themselves presented a case for the usual kind of marshaling. The senior mortgage holder is required to collect first from the collateral that is not also collateral for the junior mortgage. For example, mortgages 1 and 2 both apply to A and B, but mortgage 1 also applies to C. Marshaling means that mortgagee 1 must take all the foreclosure proceeds of C before taking any of the proceeds of A and B. This preserves the proceeds of A and B as much as possible to pay the second mortgagee who is secured only by A and B.

Marshaling would also apply between mortgages 2 and 3. Mortgagee 2 would

receive from mortgagee 1 the leftover proceeds of A and B. Mortgagee 2 would be required to take all the proceeds of A before taking any of the proceeds of B. This would preserve the proceeds of B as much as possible for mortgagee 3 whose mortgage applies only to B.

In *Gilliam v. McCormack*, this was not possible because of the later mortgages. The mortgages were as follows:

| Mortgage | Collateral |
|---|---|
| 1 | A, B, & C |
| 2 | A & B |
| 3 | B |
| 4 | A & B |
| 5 | C |
| 6 | A & B |

The problem may be easier to explain if we consider the following situation:

| Mortgage | Collateral |
|---|---|
| 1 | A & B |
| 2 | B |
| 3 | A |

Mortgagee 2, being secured only by B, would doubtlessly like to require mortgagee 1 to take all the proceeds of A before dipping into the proceeds of B, but mortgagee 3 is in just the opposite position; he would like mortgagee 1 to take all the proceeds of B before dipping into the proceeds of A.

The court in *Gilliam v. McCormack* solved the problem by holding that mortgagee 1 should take his payment from the proceeds of both A and B according to the ratio of the proceeds from each to the total proceeds from both. The court explained that the lower priority mortgages should share the burden of the higher priority mortgages. *Green v. Ramage*, 18 Ohio 428 (1849); Annot., 106 A.L.R. 1102 (1937).

The procedure may be easier to understand if we assume some dollar amounts for *Gilliam v. McCormack*.

| Mortgage | Debt | Collateral |
|---|---|---|
| 1 | $12,000 | A, B, & C |
| 2 | 9,000 | A & B |
| 3 | 6,000 | B |
| 4 | 2,000 | A & B |
| 5 | 2,000 | C |
| 6 | 1,000 | A & B |

Proceeds of Foreclosure

A = $15,000
B = $10,000
C = $ 5,000

Proportionate Shares of A + B + C

A's share:  A : (A + B + C) = 50%
B's share:  B : (A + B + C) = 33.33%
C's share:  C : (A + B + C) = 16.67%

Proportionate Share of A + B

A's share:  A : (A + B) = 60%
B's share:  B : (A + B) = 40%

Since C was 16.67% of the proceeds from A, B, C, it should pay at least 16.67% of the debt to mortgagee 1. A, B, and C would each be liable for their share of the debt to mortgagee 1 in order to preserve the proceeds A, B, and C as much as possible for the later mortgages.

This example follows *Gilliam v. McCormack*. C's share of the first debt is $2,000, and the debt to mortgagee 5 is $2,000—a total of $4,000; the proceeds of C are $5,000. This leaves an extra $1,000 that can be applied to the debt to mortgagee 1. This extra $1,000 from C can be marshaled for the benefit of mortgages 2, 3, 4, and 6, who are secured only by A and B. This is exactly what was done in *Gilliam v. McCormack*.

After using the proceeds of C, the situation is as follows:

| Mortgage | Debt | Collateral |
|---|---|---|
| 1 | $9,000 | A & B |
| 2 | $9,000 | A & B |
| 3 | $6,000 | B |
| 4 | $2,000 | A & B |
| 6 | $1,000 | A & B |

The proceeds of A and B are all still on hand and total $25,000. The problem is the same as before, but now we use the proportions based only on the proceeds of A and B. A pays 60% of mortgage debts 1 and 2, and B pays 40%.

| Mortgage | Debt | A (60%) | B (40%) |
|---|---|---|---|
| | | $15,000 | $10,000 |
| 1 | $9,000 | − 5,400 | − 3,600 |
| | | $ 9,600 | $ 6,400 |
| 2 | $9,000 | − 5,400 | − 3,600 |
| | | $ 4,200 | $ 2,800 |
| 3 | $6,000 | | − 2,800 |

–0–

| Mortgage | Debt | A (60%) | B (40%) |
|----------|------|---------|---------|
| 4 | $2,000 | — 2,000 | |
| | | $ 2,200 | |
| 6 | $1,000 | — 1,000 | |
| | | $ 1,200 | |

We end up with $1,200 left over from A, but mortgagee 3, who was secured only by B is $3,200 short of being paid in full. In light of what the court did with the proceeds of C, the proper course is to pay the $1,200 to mortgagee 3. This is a partial marshaling of the proceeds of A for the benefit of mortgagee 3.

It is not unfair for mortgages 4 and 6 to be paid in full while mortgagee 3 receives less than full payment. Mortgagee 3 receives less than full payment because his third mortgage applies only to B, instead of A and B. Mortgages 4 and 6 were paid in full only from the proceeds of their additional collateral, A. The excess of $1,200 from A was marshaled for mortgagee 3's benefit to reduce his loss on B.

We can illustrate the trustee's argument better by taking the situation in *Gilliam v. McCormack* after C's proceeds were used and simplifying it.

| Mortgage | Collateral |
|----------|------------|
| 1 | A & B |
| 2 | A & B |
| 3 | B |
| 4 | A & B |
| 6 | A & B |

Since mortgages 1 and 2 secured the same creditor and applied to the same collateral, they can be treated as one mortgage. Likewise, mortgage 6 can be ignored since it and mortgage 4 are secured by the same collateral; proportional payment from the proceeds of A and B is irrelevant between mortgagees 4 and 6. This leaves the situation as follows:

| Mortgage | Collateral |
|----------|------------|
| 1 | A & B |
| 2 | B |
| 3 | A & B |

The trustee argues that the the facts in this case are the same:

| Creditor | Collateral |
|----------|------------|
| Bank | Equipment and Accounts |
| Bank | Accounts |
| Trustee | Equipment and Accounts |

Furthermore, since the court in *Gilliam* in effect required the first mortgagee to take payment proportionally from A and B, so that the proceeds of A could be passed on the mortgagee 3, the court should do the same in this case; it should require the bank to take payment of the first debt proportionally from the proceeds of the equipment and the accounts so that the leftover proceeds from the equipment can be passed on to the trustee.

The question in this case is whether the result should be different because the bank holds both the first and the second security interest.

The Tennessee Supreme Court in *Gilliam v. McCormack* seemed to say that marshaling did not apply, but it obviously marshaled the collateral for the first two mortgages in order to benefit the remaining mortgage holders. The Tennessee Supreme Court must have meant only that the usual kind of marshaling did not apply. Thus, the trustee in this case is asking the court to force the bank to marshal its collateral for the benefit of his inferior judgment lien; he wants the court to take collateral away from the bank, despite its prior lien on both the equipment and the accounts, and give it to him for payment on his junior lien.

If the court adopts the trustee's proposed marshaling, it will deprive the bank of almost $15,000 that it would otherwise apply to its debt. This would violate a cardinal rule of marshaling: the senior lienholder can be required to marshal its collateral—to take payment from its collateral in a particular order that will benefit subsequent lienholders—only if the senior lienholder will not be prejudiced. *In re Plad*, 24 B.R. 676 (Bankr.M.D.Tenn.1982); *Gilliam v. McCormack*, 85 Tenn. 597, 4 S.W. 521 (1887); *Mowry v. Davenport*, 74 Tenn. 80 (1880). For this reason, the court concludes that the trustee can not force the bank to marshal its collateral as he contends.

In this regard, the court must point out that the first and second mortgage debts in

*Gilliam v. McCormack* were paid in full, and the court knew they would be paid in full, before it ordered the creditor to take its payment proportionally from the proceeds of A and B. The court has no doubt that the Tennessee Supreme Court would have allowed the creditor to take all the proceeds of A or B or both as required for payment of its debts if proportional payment had been insufficient to pay its debts in full.

In *Gilliam v. McCormack*, the Tennessee Supreme Court relied on the English case of *Barnes v. Racster*, which is said to be the seminal case for this kind of marshaling. *Barnes v. Racster*, 62 Eng.Rep. 944, 1 Younge & C.Ch.Cas. 401 (1842); Annot., 106 A.L.R. 1102 at 1111 (1937).

In *Barnes v. Racster*, the mortgages were as follows:

| Mortgage | Collateral |
| --- | --- |
| Barnes | A |
| Hartwright | A |
| Barnes | A & B |
| Williams | A & B |

B was worth enough to pay both secured debts to Barnes. Hartwright, who was secured only by A wanted to compel Barnes to take payment completely from B and leave A for him. Of course, this would have cut off Williams' rights as mortgagee of B.

The court treated the situation as follows:

| Mortgagee | Collateral |
| --- | --- |
| Barnes | A & B |
| Hartwright | A |
| Williams | A & B |

The court held that Barnes should take payment from the proceeds of A and B proportionally in order not to favor Hartwright's second mortgage on A over Williams's second mortgage on B and vice versa. The court treated Barnes as having one debt secured by one mortgage, the first mortgage on A and B, even though the mortgages were given separately, first on A and then on A and B, with Hartwright's mortgage on A coming in between.

This supports a conclusion in this case that the bank as the holder of a first security interest in the equipment and the accounts and a second security interest in the accounts only can be treated as having a first security interest in both to secure the combined debt even though the security agreements failed to include an other-debts or a cross-collateral clause.

The situation then is:

| Creditor | Collateral |
| --- | --- |
| Bank | Equipment and Accounts |
| Trustee | Equipment and Accounts |

Proportional payment is irrelevant in this situation, since we simply have a prior lien and a junior lien on exactly the same collateral.

The court has not found any Uniform Commercial Code Cases that are especially helpful. In one case the court recited the rule that marshaling can not decrease the rights of the holder of the security interest that has priority. *Platte Valley Bank v. Kracl*, 185 Neb. 168, 174 N.W.2d 724, 7 UCC Rep. 538 (1970). In this case, the bank's security interest in the equipment and its security interest in the accounts have priority over the trustee's hypothetical judgment lien on either.

Two other cases refuse marshaling, either the usual kind or proportionally, to benefit the guarantors of the secured debts, but neither case contains much discussion. *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich.App. 359, 220 N.W.2d 83, 14 UCC Rep. 1483 (1974); *Atkins v. Citizens & Southern Nat. Bank*, 127 Ga.App. 348, 193 S.E.2d 187, 11 UCC Rep. 658 (1972).

Though the trustee's argument is imaginative, the court can not believe that Tennessee law allows the holder of a junior lien to take collateral away from the senior lien and thereby reduce the payment to the senior lienholder.

The court will enter judgment for the defendant, American National Bank.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.