Hall *v.* Fulgham.

HALL *v.* FULGHAM.

2pi 451
3pi 282

(*Nashville.* February 25th, 1888.)

1. HOMESTEAD. *Waiver of. Mortgage.*

A debtor's mortgage of his homestead for a particular debt operates as a waiver of his homestead right in the lands conveyed as to *that debt only,* but not as to his other debts.

Cases cited and distinguished: Hildebrand *v.* Taylor, 6 Lea, 659; Enochs *v.* Wilson, 11 Lea, 228; Rayburn *v.* Norton, 85 Tenn., 351; Parr *v.* Fumbanks, 11 Lea, 391.

2. SAME. *Same. Express waiver not requisite in deed.*

Express waiver of homestead in a deed or mortgage is unnecessary, and adds nothing to the scope or legal effect of those instruments.

(See 9 Bax., 393; 2 Lea, 238; 5 Lea, 100.)

---

FROM CHEATHAM.

---

Appeal from the Chancery Court of Cheatham County. GEO. E. SEAY, Ch.

General creditors of J. H. Fulgham filed their bills against him and others to reach his interest in land occupied as a homestead, and previously conveyed by joint mortgage of himself and wife, expressly waiving homestead, to secure another creditor. The mortgage was not mature when the bills were filed. Fulgham set up a claim to homestead against all his debts except the one secured by the mortgage.

The Chancellor refused to decree foreclosure of the mortgage, but directed sale of the land subject to it, free from Fulgham's claim of homestead therein. Fulgham alone appealed.

A. D. MARKS and COLYAR, MARKS. & CHILDRESS for Complainants.

JOHN E. & A. E. GARNER and JOHN P. HELMS for Respondents.

CALDWELL, J. The complainants in these causes brought their bills in the Chancery Court of Cheatham County to subject a certain tract of land to sale for the payment of their debts against defendant, Fulgham.

They allege, in the first instance, that he has fraudulently conveyed the land to his co-defendant, Greer, and, in the alternative, that the conveyance is, at most, but a mortgage; and they pray that the deed be set aside, and the land sold for their benefit; and, in the event that cannot be done, that the conveyance be treated as a mortgage, and be foreclosed, so that they may receive the surplus after paying what may be found to be due to Greer.

The defendants, in their answers, deny the charge of fraud, but admit that the conveyance, though absolute on its face, was in fact intended only as a mortgage to secure a debt for borrowed money. They say that this debt is not due, and

deny the right of complainants to have the mortgage foreclosed before it is due.

It is further alleged in the bills, and admitted in the answers, that Fulgham's wife joined him in the execution of the conveyance, and that he and his family are living upon the land, possession thereof not having been changed.

And Fulgham asserts a claim to homestead in the land as against complainants, but not as against Greer, the mortgagee.

After the answers were filed, complainants abandoned so much of their bills as impeached the conveyance for fraud, and retained only so much of them as sought a foreclosure of the mortgage and a subjection of the surplus proceeds of the land.

Thereupon, it was agreed, in writing, that defendant, Fulgham, was indebted to the complainants, respectively, in the sums set out in the agreement; that the conveyance from Fulgham and wife to Greer was made in good faith, to secure the payment of $1,500, which Greer at the time loaned to Fulgham, and for which Fulgham executed his promissory note to Greer; that the conveyance was intended as a mortgage only, and that the note and mortgage were not mature.

On the hearing the Chancellor refused to foreclose the mortgage, because Greer would not consent thereto, and his debt was not yet due; but he rendered decrees in favor of the complainants for their debts, and for the payment thereof

adjudged the land to be sold, *subject alone to the mortgage of Greer, and without allowing Fulgham a homestead in any manner.*

Fulgham has appealed to this Court, and here insists that the decree is erroneous in so far as it adjudges that he is not entitled to a homestead in the land as against the debts of the complainants.

He makes no claim of homestead as against Greer, and could not successfully do so, because as between them the mortgage is clearly superior to that claim. But the land may be of sufficient value to satisfy the mortgage and leave enough for a homestead.

Then, what effect, if any, upon the right to homestead, has the mortgage *as between Fulgham and the complainants?*

It must be conceded that before the mortgage was executed Fulgham was entitled to a homestead in this land as against the debts of the complainants; and it is equally obvious that the mortgage, when made, was not *intended* to operate for their benefit in any manner whatever, and that they were in no possible sense embraced in any of *its terms or provisions.*

Before the mortgage was made they could not have deprived him of his homestead, and they cannot do so now, unless the mortgage shall in some way, independent of the intention of the grantor and of the usual scope of such instruments, be efficacious to give them that right. Had the

conveyance been of property not exempt, and in which Fulgham had no right to homestead under the law, no one would contend for a moment that complainants could receive any sort of advantage by or through its execution. Hence, if they are given any benefit now on account of the mortgage, it must be due alone to the fact that Fulgham did, in the first instance, have a right to homestead in the land. In one aspect that would seem to be a very strange result.

But complainants do not claim to be beneficiaries under the mortgage in the ordinary sense. The benefit they seek is an indirect one. Their contention is that the right to homestead was destroyed by the execution of the mortgage, and that the whole of the land was thereby rendered subject to the debts of Fulgham; first to that due to Greer, the mortgagee, and then to those due to other creditors.

As we understand the argument of learned counsel for complainants, this result is sought to be reached in two ways; *first*, upon the theory that the mortgage constitutes a waiver of the homestead as to all creditors, and *secondly*, through the doctrine of marshaling securities.

Confessedly the mortgage passed to the mortgagee the whole legal title to the land, and, as against his debt, carried the homestead right. But we do not think it changed the legal *status* of the property, with respect to the homestead, so far as the other creditors are concerned.

The mortgageor holds the legal title for a particular purpose — to secure the payment of his debt. Fulgham is the equitable owner of the land; it is his property, subject alone to the payment of that debt; and if payment should be made without sale, he would at once become entitled to the legal title.

The conveyance was made for no other purpose, and has no other import in law. The contract is that Greer shall hold the title to the land as security for his debt, and nothing more.

It cannot be inferred that Fulgham *intended* to waive his homestead as to all his creditors because he mortgaged it to one of them; nor will the law give such an effect to the transaction. To do so would be to make and apply a harsh rule, to defeat a right which is favored by all the Courts.

Before a man will be held to have waived a legal right, his intention to do so must be shown by some clear, unequivocal, and decisive act on his part. The execution of the mortgage in this case is of itself such an act, with respect to the homestead, so far as Greer is concerned. That is undisputed. But it is not so as to other creditors, for they are not within the purpose or language of the mortgage, and the waiver of a right as to one person, when it may exist as to many, is not a waiver as to others, unless so intended. Not only does the face of the mortgage fail to disclose a purpose on the part of Fulgham to waive his homestead right as to his creditors gen-

erally, but the fact that it was not executed ex-
pressly for the benefit of all of them, and the
further fact that he continued to reside upon the ·
land as his home, show ' that he had not such
purpose in his mind.

The recital in the mortgage that the land was
conveyed "free from all homestead and dower
rights," did not enlarge the legal effect of the in-
strument, and is not at all important in this case.
Both the husband and the wife having joined in
the conveyance of the land, the right to home-
stead would have passed, the same without that
recital as with it.    In either case the *conveyance*
would be a complete waiver of that right as to
Greer; in · neither would it be a waiver at all as
to these complainants.

The cases of *Hildebrand* v. *Taylor*, 6 Lea, 659,
*Enoch* v. *Wilson*, 11 Lea, 228, and *Rayburn* v.
*Norton*, 1 Pickle, 351, are not applicable in this
case, upon the question of waiver or otherwise.
In those cases it was decided that a wife could
not successfully assert her claim to homestead in
land mortgaged by her husband alone, or sold
under execution for his debts, when she, after
such mortgage or sale, had joined him in a con-
veyance of . other land of sufficient value for a
homestead, and upon which they resided at the
time.    No such question is raised in this case.

With respect to the second ground upon which
it is sought to defeat the homestead claim as be-
tween Fulgham and the complainants, it is deemed

sufficient to say that the facts of this record do not present a case for the application of *the doctrine of marshaling securities.* Hence, the case of *Parr, Nolen & Co.* v. *Fumbanks,* 11 Lea, 391, is not in point.

So much of the Chancellor's decree as denied Fulgham's claim of homestead as against the debts of the complainants is reversed. Otherwise, his decree is affirmed, and the land will be sold *subject to the mortgage of Greer and the homestead of Fulgham.*

The question of foreclosing the mortgage by a sale to pay Greer's debt, is not before us.

Complainants will pay the costs of appeal.