## MEEK v. THOMPSON.

*(Knoxville.*    November   6,   1897.)

MARSHALING ASSETS.   *Priority of lienors.*

One to whom land has been mortgaged as security for a *bona fide* debt is entitled to have other land then owned by the mortgagor subjected to the payment of a prior judgment against such mortgagor, which was a lien on all the land, as against persons who, subsequently to the execution of such mortgage, obtained liens on such other land.

Cases cited and approved: Thompson *v.* Pyland, 3 Sneed, 538; Rice *v.* Hunt, 12 Heis., 350; Jones *v.* Maney, 7 Lea, 341; Hunt *v.* Ewing, 12 *Ib.*, 519; Boyce *v.* Stanton, 15 *Ib.*, 346.

Case cited and distinguished: Gilliam *v.* McCormack, 85 Tenn., 598.

FROM KNOX.

Appeal from Chancery Court of Knox County. H. B. LINDSAY, Ch.

D. R. NELSON for Meek.

GREEN & SHIELDS for City National Bank.

TEMPLETON & CATES for V. Klein.

COOPER & DAVIS for Steel & McMillan.

G. W. WINSTEAD for Flanders.

Meek *v.* Thompson.

CARNICK, HENDERSON & SANSOM for Allen Stephenson & Co.

WEBB & McCLUNG for Jacob Thomas.

BEARD, J. On January 24, 1893, the cross-complainant, J. L. Thomas, secured a judgment against M. E. and S. O. Thompson, which was a prior and superior lien on all their real estate in the county of Knox, as well as that lying in the counties of Jefferson and Campbell. Soon thereafter these defendants began to convey, by trust deeds made to secure other creditors, distinct portions of their real estate. The first of these instruments was executed on February 1, 1893, and conveyed certain lots in Thompson's addition to Knoxville, for the purpose of securing the cross-complainant, V. Klein; a second was made on March 7, 1893, on a house and lot in still another addition to Knoxville, to secure one Lieber, trustee; a third on April 10 following, on a tract of land lying in the twelfth civil district of Knox County, to secure the Central Savings Bank; a fourth on April 18, to secure Joseph Meek, and conveying certain lands in Campbell County and thirty-three lots in Thompson's addition (but excluding the Klein lots) to Knoxville; a fifth on April 27, 1893, conveying lands in Jefferson County, to secure one Gillespie in a note, which he afterwards assigned to the City National Bank; a sixth and seventh deed executed on the same day, one of them to secure Joseph Meek, and conveying the same property em-.

braced in the former deed for his benefit, and here classified as the fourth, and the other to secure the Mechanics' National Bank, and embracing other and different property from that conveyed in the previous deed of trust. All these deeds contain the usual clauses of warranty, and were duly registered.

On May 22, 1893, Steele & McMillan recovered a judgment against the Thompsons, upon which an execution issued, that was levied on still other parts of the real estate of these debtors; and on May 26, 1893, Allen Stephenson & Co., having recovered a judgment against the same debtors, caused an execution issuing thereon to be levied on yet other distinct lots of their land.

These properties have all been sold under decrees pronounced in this cause, and the funds are now under the control of the Court. It is conceded by all the junior lienors that Thomas, by virtue of his judgment, had a prior lien on all these tracts, and is entitled to be first satisfied out of the proceeds; the question in controversy is, how is he to be satisfied, and at whose expense? The Chancellor held that these junior lienors should contribute ratably to the discharge of the Thomas judgment, and the Court of Chancery Appeals has affirmed his holding. From this last decree V. Klein and the City National Bank have appealed and assigned errors.

In *Jobe* v. *O'Brien*, 2 Hum., 34, it was held that there was no marshaling of assets as between junior incumbrancers, but the loss would fall exclusively

upon that one whose lands were subjected to the prior or dominant lien. This case, however, was not followed, and, while not in express terms, yet it has been practically overruled in a great number of cases, beginning with *Henshaw* v. *Wells*, 9 Hum., 580. In *Williams* v. *Adkinson*, 3 Sneed, 586, it was announced as a sound principle that "as between equal equities, he who is prior in time is strongest in right; if the person who ought to pay the debt has conveyed different parcels of land bound for its payment, at several times to *bona fide* purchasers, as between such purchasers, the lands are chargeable in the inverse order of their alienation." The rule thus stated has been approved and applied in *Thompson* v. *Pyland*, 3 Sneed, 538; *Rice* v. *Hunt*, 12 Heis., 350; *Jones* v. *Maney*, 7 Lea, 341; *Hunt* v. *Ewing*, 12 *Ib.*, 519; *Boyce* v. *Stanton*, 15 *Ib.*, 346. This equitable rule for the protection, against an existing and dominant lien, of a purchaser of lands claiming under a registered deed with warranty, is made effectual without regard to the character of the superior lien. The cases most frequently calling for the rule are those involving liens by contract, but there is no reason why it should be confined to these, and it has not been. In this State it has been applied "as between purchasers at different dates of different parcels of land" chargeable with judgment liens. *Hunt* v. *Ewing*, *supra;* *Jones* v. *Maney*, *supra;* *Mowry* v. *Davenport*, 6 Lea, 80.

It will thus be seen that, though adopted by the

Courts without the aid of a statute, yet it has been so long established, and so uniformly applied, that it may well be regarded as a rule of property in this State. It is a mistake to suppose that its application depends upon whether the lands covered by the dominant lien were acquired, by the party selling, from one source or, as in the present case, from various sources — from one vendor at one time, or from several vendors at different times. The true foundation of the doctrine is in the equities subsisting between the vendor, or mortgagor, and his grantee of a part of the premises subject to the superior lien. Wherever a portion of lands so subject is conveyed by a warranty deed that is properly registered, and a portion is retained by the grantor, as between himself and his grantee, that part retained becomes in equity a primary fund for the discharge of this superior lien. As is well expressed by Mr. Pomeroy, in Section 1224, third volume of his work on Equity Jurisprudence, "the form of the deed shows that the grantee not only assumed payment of no portion of the mortgage debt, but did not buy his parcel even subject to the mortgage; and the entire burden was, therefore, left upon the portion of land remaining in the ownership of the mortgagor. Whatever be the rights of the mortgagee to resort to either or both of the parcels, it is plainly the equitable duty of the mortgagor to assume the whole debt, and thus to free the grantee's parcel from the lien. If, therefore, the

mortgagor pays off the mortgage, its lien is ended, and he can claim no contribution from the grantee. If, on the other hand, the grantee redeems, he is entitled to keep the lien alive for the purpose of enforcing an exoneration by the mortgagor, at least to the extent of the value of the premises remaining in the mortgagor's hands subject to the incumbrance. . . . The doctrine being thus established that the grantee obtains an equitable priority as against the mortgagor, and the portion of the premises left in the mortgagor's hands is primarily chargeable with the whole mortgage, the inference is natural, if not necessary, that the same burden follows this portion when subsequently conveyed by the mortgagor to the second grantee.''

This rule has been adopted by a large majority of the Courts of this country, so that they enforce execution for the protection of the first grantee, from a common burden, in a proper case, by requiring the property subject to such burden to be applied in the inverse order of its alienation, upon the application of the first grantee, even before he has discharged the debt, this being done on the principle of *quia timet*.

But it is insisted that the contrary view was taken by this Court in *Gilliam* v. *McCormack*, 85 Tenn., 598, and that case is cited as authority for the decree of the Court of Chancery Appeals in the present cause. It may be said that it would be a matter of astonishment if the Court should have intended to

overrule the many cases maintaining this equitable doctrine, and yet fail altogether to mention them; or that it should have reversed what may well be called "a rule of property," so long accepted as satisfactory to the profession of the State, without powerfully constraining reasons. But it is evident, upon the face of the opinion in that case, that it was not in the mind of the Court in any way to conflict with this rule; on the contrary, it was disposing of a controversy with which it had no connection. This Court, *arguendo*, said: "A marked distinction exists between the cases holding lands subject to the lien of the vendor, or that of a mortgage or judgment liable to the discharge of such lien in the inverse order of alienation. In all such cases the parcels were all actually bound by lien or incumbrance, of which the alienees had notice either actual or constructive, and not by a mere equity, such as that to have a marshaling." This language clearly implies a recognition of the existing rule, and as clearly that the Court was dealing with a case which it did not regard as falling within it. That case. involved a controversy between junior lienors, not, as in this case, a question as to where the burden of satisfying the dominant liens should fall, but as to the appropriation of the proceeds of the property remaining after the dominant lien had been satisfied. The contention there was this: Mr. McCormack owned three lots, A, B, C, all of which he mortgaged to McFarland; then he gave a second mortgage to the same

mortgagee on A and B; subsequently he mortgaged B to James McCormack, then A and B to Gilliam, then C to Merritt & Robinson, and lastly A and B to Annie Lawrence. These lots were sold under decrees of the Court, and, the senior mortgagee being satisfied, the question of marshaling the remaining proceeds arose between James McCormack, the third, and Merritt & Robinson, the fifth, incumbrancer. The contention of McCormack was that at the time he took his mortgage on B he had a clear equity against the senior mortgagee, McFarland, by which he could compel him to exhaust A and C before reaching B, and this equity could not be displaced by the subsequent mortgage taken by Merritt & Robinson on C. This was the sole contention presented to this Court, and it was held against McCormack in these words: ''The equity to marshal assets is not one which fastens itself upon the situation at the time the successive securities are taken, but, on the contrary, is one to be determined at the time the marshaling is invoked.'' This is the extent of the Court's holding, and it affords no authority for the decrees pronounced in this case.

The result is, the decree of the Court of Chancery Appeals, in this respect, is reversed.