# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

## NASHVILLE, DECEMBER TERM, 1913.

*(Continued from Vol.* 128.)

KING *et al. v.* PATTERSON *et al.*

*(Nashville.* December Term, 1913.)

1. **ATTACHMENT. Necessary parties. Attachment of mortgaged property,**

   A creditor attaching the property of a nonresident debtor under Shannon's Code, sec. 5211, must, where the legal title is in a mortgagee, make the mortgagee a party defendant; for otherwise the mortgagee may assert his rights and cut off the attachment by foreclosure, and the property, if sold under the attachment, will not bring a fair price. (*Post, pp.* 11-17.)

   Code cited and construed: Secs. 5211, 5218 (S.)

   Cases cited and approved: Lane v. Marshall, 48 Tenn., 30; Rice .v O'Keefe, 53 Tenn., 638; Lyle v. Longley, 65 Tenn., 288; Fulghum v. Cotton, 74 Tenn., 596; Cloud v. Hamilton, 11 Tenn., 82; Craig Miles v. Hays, 75 Tenn., 720; Schultz v. Blackford, 77 Tenn., 431; Hall v. Fulgham, 86 Tenn., 451; Bridges v. Cooper, 98 Tenn., 382; McClung v. McSpadden, 101 Tenn., 434; Blackburn v. Clarke, 85 Tenn., 506; Jackson v. Coffman, 110 Tenn., 272; Railroad v. Todd, 58 Tenn., 556.

2. **ATTACHMENT. Proceeding. Amendment.**

   Where numerous creditors of a nonresident debtor were striving for priority by attachments on his property, complainants, who did not join as a party the mortgagee of land which they attached, are not entitled to permission to amend their bill so as

King v. Patterson.

to correct the defect; defendants having already acquired valid attachment liens thereon, having made the mortgagee a party. (*Post, pp.* 17, 18.)

3. **ATTACHMENT. Motion to quash. Nonjoinder of parties. Waiver.**

Defendants and complainants filed separate bills for attachments on the property of a nonresident debtor. After consolidation of the suits, defendants moved to quash complainants' attachments, and excepted to the report of the master fixing priority. *Held* that, as defendants were not parties until the consolidation of the suits, their right to object to the failure of complainants to join the mortgagee of the debtor's property, who was the holder of the legal title, as a party defendant had not been waived, and might be raised by the objections made. (*Post, p.* 18.)

4. **ATTACHMENT. Actions. Defenses. Mode of raising.**

Where numerous attachment suits were consolidated, motions to quash complainants' attachments and exceptions to the report of the master fixing the priorities of the parties are the proper methods of raising the question whether complainants' attachments were void for failure to join the holder of the legal title of the property attached. (*Post, p.* 18.)

5. **MARSHALING ASSETS AND SECURITIES. Right to marshaling.**

Where numerous creditors who had no liens upon the property of their debtor all sought to acquire liens by attachments, some of which were not duly perfected for want of necesary parties, there can be no marshaling of assets between the successful and unsuccessful creditors; for the doctrine of marshaling arises only where one creditor has a lien upon two funds or two parcels of land, and another having a lien upon only one of them, in which case the first creditor will, in equity, be required to seek satisfaction first out of that fund or property upon which the second creditor has no lien. (*Post, pp.* 19-21.)

Cases cited and distinguished: Gilliam et al. v. McCormack et al., 85 Tenn., 610 White v. Fulghum, 87 Tenn., 282; Allen v. Gilliland, 74 Tenn., 534.

Cases cited and approved:   Meek v. Thompson, 99 Tenn., 732;. Whitmore v. Roscoe, 112 Tenn., 623-636; Gwynne v. Estes, 82 Tenn., 673; Parr v. Fumbanks, 79 Tenn., 394.

6. **EQUITY. Pleading. Multifariousness.**

Under Shannon's Code, sec. 6137, providing that the uniting in one bill of several matters of equity, distinct and unconnected, against one defendant is not multifariousness, the joining in one bill of attachment suits by numerous unsecured creditors does not render the bill multifarious.   (*Post, pp.* 22, 23.)

7. **EQUITY. Pleading. Multifariousness.**

Where a bill by numerous attaching creditors also sought equitable relief, defendants must, under the direct provisions of Shannon's Code, sec. 6135, raise the objection of multifariousness by motion to dismiss or demurrer, or it will be waived. (*Post, p.* 23.)

Code cited and construed:   Sec. 6137 (S.).

---

## FROM GILES.

---

Appeal from Chancery Court, Giles County.—JOHN F. MORRISON, Special Chancellor.

E. E. ESLICK, R. H. McLAURIN, and STEWART WILKES, for plaintiffs.

CHILDERS & WOODWARD, for defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This was a bill filed August 24, 1911, by J. H. King and others against J. H. Patterson, a nonresident debtor, and divers of his creditors.   Complainants were also creditors of Patterson, and, as such, had, prior to the filing of the present bill, filed attachment bills against Patterson as a nonresident debtor, seeking to subject his property to the payment of their debts. The

defendants in the main, as creditors of Patterson, had also filed attachment bills seeking to fix liens upon his property, and decrees subjecting the property to payment of their respective debts.

Under this bill, and after divers proceedings had been had in the cause, which need not be set out in detail, an order of consolidation was entered on November 15, 1911, on motion of complainants in each of the attachment bills which had been filed by creditors of Patterson, this motion being joined in by those creditors who were complainants and those who are defendants to the present bill; and, along with the divers attachment bills, there was also consolidated a bill filed by the Northwestern Mutual Life Insurance Company against Patterson and wife, seeking the foreclosure of a mortgage on certain of the lands of Patterson. This order of consolidation recited, in substance, that judgments and decrees had been taken for debts sought to be collected by attachments under said various bills, "and, liens having been fixed by said decrees upon the real estate attached in said various causes, and it appearing that a sale in each case is both impracticable and will entail a large and useless expense, and that one sale would be in the interest of all parties, it is therefore ordered, adjudged, and decreed by the court that said causes be consolidated for hearing, and, under such consolidation, there may be had a decree for sale, and such other orders, references, accounts, and decrees as the rights and equities of said various parties may entitle. It is not intended hereby to adjudge any rights

King v. Patterson.

or equities as between any of the parties complainant to said cause, but only to consolidate the same for hearing as aforesaid.''

After the order for consolidation, but of the same date, a decree was entered which recited as its caption the styles and caption of the present case and of each of the attachment cases, including those brought by complainants as well as those brought by defendant, and also including the foreclosure suit brought by the Northwestern Mutual Life Insurance Company; and this decree also contained copies of each of the decrees which had been taken in each of the attachment cases against the absconding debtor, and also a copy of the decree which had been rendered against him under the foreclosure bill filed by the Northwestern Mutual Life Insurance Company; and, after making all of these recitals, the decree in the consolidated causes adjudged that all of the land which had been levied on in the divers attachment suits, as recited in the decrees copied, should be sold by a special commissioner named. The lands to be sold were described, and those first described were those covered by the mortgage of the Northwestern Mutual Life Insurance Company, which consisted of three tracts, one containing 275 acres, on containing $123 \frac{24}{100}$ acres, and one containing $212 \frac{24}{100}$ acres, in all aggregating $610 \frac{48}{100}$ acres. Divers other tracts were described which had been levied on in the attachment suits. The manner of making the sale and terms thereof were prescribed, etc. This decree also recited that the attachments sued out

by complainants, naming them, purported to have been issued and levied upon the lands or equity therein of the debtor under the Northwestern Mutual Life Insurance Company's mortgage, but that said company was not made a party to any of said attachment bills, and that therefore all questions with regard to the validity of said attachments and the rights and liens acquired thereunder are reserved for future action by the court.

By virtue of the foregoing decree, the lands therein described were sold by special commissioner thereby appointed on December 16, 1911, and the sale was reported to the court on February 15, 1912, and the sale was confirmed, and a decree was entered divesting and vesting title as to each tract sold.

On April 9, 1912, there was an order as to payment of costs, and on the same day each of the defendant attaching creditors made a motion to quash and vacate the attachment sued out by each of the complainant attaching creditors. Each of these motions was based on two grounds: (1) That, as to the lands which had been mortgaged to the Northwestern Mutual Life Insurance Company, each levy purported to be on the equitable interest of Patterson, the debtor; but the owner of the legal title was not made a party to the bill or proceeding, and was in no way before the court in each of those attachments. (2) That each of the attachment bills of complainants "attempt on behalf of separate, distinct, and disconnected general creditors to impound and administer in one attachment cause the estate of an absconding debtor." Wherefore each

King v. Patterson.

motion insisted that each of said attachment proceedings was void and of no effect.

On the same day the foregoing motions were made in this cause, to wit:  On July 9, 1912, the clerk and master made a report fixing the priority of the lien of each attachment which had been levied in the respective attachment suits, according to the date at which each levy was made; and to this report each of the creditors who made a motion as aforesaid filed also an exception to the report, and in each exception two grounds were relied on, each of which was identical with those relied on, in each of the motions.  The motions and exceptions were passed on by a decree of date July 10, 1912, and the court sustained the first ground of each of said motions and each of said exceptions, and decreed that each of the attachments sued out by the complainants in this suit were void, in so far as the lands were concerned which had been mortgaged to the Northwestern Mutual Life Insurance Company, because that company, as the holder of the legal title, had not been made a party defendant or brought before the court; to which action of the court complainants in this cause severally excepted.

The court overruled the second ground of each of the motions and exceptions, and to this action of the court the defendants to this cause severally excepted.

Thereupon complainants in this cause moved the court to refer this case to the master to report from the record what properties, real and personal, had been levied on by complainants in each of the causes con-

solidated herewith, and that decree be had in this cause marshaling the securities and liens in this cause and the causes consolidated. But the court overruled this motion, and to its action complainants excepted.

Thereupon complainants moved the court for leave to make the Northwestern Mutual Life Insurance Company of Milwaukee a party defendant to this cause, and also to make said company a party defendant to the several attachment bills which had been filed by complainants. But the court overruled this motion, and to its action complainants excepted.

The decree then recites that the cause came on for hearing on the whole record, and the bill was sustained for the purpose of consummating one sale and determining in one suit the priorities of the attaching creditors. But, so far as the bill sought a marshaling of assets and securities, the court was of opinion that complainants were not entitled to the equity of marshaling, for that the valid attachment liens attached as of the date of the respective levies on the land sold or any part of it, and therefore, in so far as the bill was one for marshaling of assets and securities, it was dismissed; to which action the complainants excepted.

The complainants in this consolidated cause appealed from so much of the foregoing decree as they had excepted to, and the defendants did the like, and each appeal was duly perfected; and the cause is before us on assignments of error by the respective parties. The assignments for the complainants raise these questions:

(1) Was the chancellor in error in holding that the complainants' attachments were void because the holder of the legal title to the Northwestern Mutual Life Insurance Company lands was not made a party defendant to the bills under which those attachments were respectively sued out?

(2) Was the chancellor in error in dismissing the bill in so far as it sought a marshaling of assets and securities?

(3) Was the chancellor in error in refusing to overrule the motion of complainants for leave to make the holder of the legal title, to wit, the Northwestern Mutual Life Insurance Company, a party defendant to this cause, and to each of the attachment bills filed by complainants?

(4) Was the chancellor in error in taxing costs against complainants?

The assignments of error made by the defendants to this cause present these questions:

(1) Was the chancellor in error in refusing to hold that each of the attachment bills of the complainants herein was void and of no effect, because each was an attempt on behalf of separate and disconnected general creditors to impound and administer in one attachment cause the estate of an absconding debtor?

(2) Was the chancellor in error in adjudging the costs of the consolidated cause against J. H. Patterson, the absconding debtor, and directing such costs to be paid out of his estate before appropriation of same

to payment of the claims of defendants to this suit as attaching creditors?

We will now proceed to dispose of the first question made by the assignment of errors on behalf of complainants, involving as it does, the validity of their attachments. It is to be noted in the outset that none of these attaching creditors by their bills set up against the equitable estate of the absconding debtor in the lands, to which the insurance company held the legal title, any legal or equitable lien whatever. These attaching creditors were mere creditors at large of the debtor, seeking by their several attachments to secure a lien on the equitable estate of the debtor in the land, and their several attachment bills do not rest on a service of process personally made upon the debtor, but they rest upon the several averments of those bills that he had become a nonresident of this State as a ground for attachment set out under section 5211 of Shannon's Code. See, also, section 5218 of Shannon's Code, which provides that any person may also sue out an attachment in the chancery court upon debts or demands of a purely equitable nature, except causes of action founded on torts, without first having recovered a judgment at law, whenever the amount in controversy is sufficient to give the court jurisdiction.

It is to be further noted that, in each of the complainants' attachment suits, no personal service of process was ever had upon the holder of the equitable estate, the service on him being wholly constructive or by publication, as authorized by our statute; and in each of

these suits the holder of the legal title to the lands, that holder being the insurance company, was not made a party defendant to the bill, or served personally or constructively with process bringing it before the court as the holder of the legal title.

In each of the complainants' several attachment suits, a decree *pro confesso* in the usual form was taken against the nonresident debtor, and following this was a decree final in favor of each creditor and against the debtor for the amounts respectively set out in the bill, and declaring a lien on the property attached; and each of these decrees reserved the matter of the sale of the property attached, the decrees reciting, as a reason for this, that it appeared to the court that various attachments had been levied on the property, and a sale thereof could be more economically made under a bill consolidating the several attachment suits. Thus stood the attachment suits of the creditors who compose the parties complainant in this consolidated cause, and, while standing thus, divers creditors who are made defendants to this suit acquired liens on the insurance company lands by the levy of attachments under bills, in each of which the holder of the legal title to the land levied on, to-wit, the insurance company, was made a party defendant, and duly brought before the court.

There was between the attaching creditors, who are complainants in this cause, and creditors of the same kind, who are defendants hereto, a race of diligence and skill, and the goal was the acquisition of a valid lien

on an equitable estate of a nonresident debtor. The complainant creditors failed to make the holder of the legal title a party defendant to their attachment bills. The defendant creditors did not overlook that important step. Was the failure by the complainants vital? Our cases answer the question, and, of these *Lane* v. *Marshall*, 48 Tenn. (1 Heisk.), 30, is the leading one. In that case King sold a tract of land to Johnson, and the sale was evidenced by a title bond which Johnson held as his assurance of title, when he should pay the balance of the purchase price of the land. Therefore the legal title to the land was in King, and the equitable title in Johnson, subject to King's lien for the balance of the purchase money. So stood the rights of the parties when, on February 6, 1865, an attachment bill was filed and the land levied on as the property of Johnson when he was a prisoner of war and beyond the limits of this State. The question for decision was the validity of the title acquired by a purchaser at a sale under a decree rendered in the attachment suit. This court held against the validity of the title, resting its decision on two points, as we understand the case: First, that the bill was not properly framed to reach the equitable estate; and, second, that King, holder of the legal title, was not made a defendant to the bill.

Upon the first ground above stated, *Lane* ·v. *Marshall* was followed and applied in *Rice* v. *O'Keefe*, 53 Tenn. (6 Heisk.), 638, and *Lyle* v. *Longley*, 65 Tenn. (6 Baxt.), 288. And, upon the second ground above

King v. Patterson.

stated, *Lane* v. *Marshall* has been followed and applied in *Fulghum* v. *Cotton*, 74 Tenn. (6 Lea), 596, where the contract was between a judgment creditor, with an execution returned *nulla bona*, on the one hand, and a mortgagee on the other., as to the right of the judgment creditor by a bill in equity to force a sale of the land mortgaged, where the mortgage debt was due, and unpaid, and the purpose of the creditor's bill was to sell the fee-simple or whole estate in the land, and out of the proceeds pay the mortgage debt and appropriate the balance upon the debt of the judgment creditor. The chancellor had held that the judgment creditor was entitled to a sale of the interest of the mortgagor, but not to a sale of the property itself, without the consent of the mortgagee. This holding of the chancellor seems to have been based on the doctrine of the English cases. But this court declined to follow the English rule, pointing out that, under their practice, a decree of foreclosure was not for the sale of the property, but was one cutting off the equity of redemption. See, also, on this point, *Cloud* v. *Hamilton*, 11 Tenn. (3 Yerg.), 82; *Craig Miles* v. *Hays*, 75 Tenn. (7 Lea), 720; *Schultz* v. *Blackford*, 77 Tenn. (9 Lea), 431; *Hall* v. *Fulgham*, 86 Tenn. (2 Pickle), 451, 7 S. W., 121; *Bridges* v. *Cooper*, 98 Tenn. (14 Pickle), 382, 39 S. W., 720; *McClurg* v. *McSpadden*, 101 Tenn. (17 Pickle), 434, 47 S. W., 698. Whereas, in this State foreclosure was accomplished by a sale of the whole property, and not the mere equity of the debtor, so as to vest the purchase with an absolute title, and to

apply the proceeds according to the priorities of incumbrances. We quote from that opinion as follows:

"In fact, it was held in *Lane* v. *Marshall* that an attachment levied upon land to which the debtor had only an equitable title, fixed no lien upon it, and the purchaser acquired nothing, not merely because it was not described as an equitable title, but because, to attach it, the holder of the legal title was a necessary party, so that the sale would pass the entire title. That was a case where the debtor held the land by title bond, subject to unpaid foreclosure money. It was held that an attachment and sale, without making the holder of the legal title a party, so as to effectuate the object had in view—that is, a sale of the property—passed nothing to the purchaser. A vendor by title bond, holding the legal title as security for unpaid purchase money, it has been often said, occupies a position very similar to a mortgagee." There is nothing in the line of cases above cited following *Fulghum* v. *Cotton* in conflict with the doctrine of *Lane* v. *Marshall*. Certainly, there is nothing in this case but the most unqualified approval of *Lane* v. *Marshall*. That case was again approved by this court in *Blackburn* v. *Clarke,* 85 Tenn. (1 Pickle), 506, 3 S. W., 505. The title to land there involved depended on attachment issuing out of the circuit court at the suit of Clarke against Blackburn and others. It was held that Clark acquired no lien by virtue of his attachment, because Blackburn had only an equitable interest in the land attached, and the holder of the legal title was not before the court.

The case last above cited and *Lane* v. *Marshall* were each approved by this court in *Jackson* v. *Coffman,* 110 Tenn. (2 Cates), 272, 75 S. W., 718, where, by bill in equity and an attachment thereon issued and levied on land, without making the trustees named in a trust deed on the land parties to the bill, though the holders of a second incumbrance evidenced by mortgage were made parties, a creditor at large sought to acquire a lien on the land of his debtor, and later, by an amended and supplemental bill and another attachment and a garnishment, sought to reach the surplus proceeds of the land originally attached, which had in the meantime been sold by the trustees for a price which paid the trust deed debt, and left a surplus in their hands. It was held, upon the authority of *Lane* v. *Marshall* and *Clarke v. Blackburn,* that the attaching creditor took nothing by his original attachment, because he had failed to make the trustees parties to his bill; and, be it noted this holding against him applied not only to his contest with the trustees, but also to his contest with the mortgagee. This case, in so far as the opinion of the court dealt with the rights of attaching creditor under his original bill, turned on the doctrine of *Lane* v. *Marshall.* The amended and supplemental bill was disposed of on other grounds.

Mr. Gibson in his Suits in Chancery, sec. 127, says: "A creditor who seeks to reach an equitable interest or estate, or to enforce a lien or equitable interest of his own, must make the owner of the legal title a party as well as the owner of the equitable interest"—citing

*Jackson* v. *Coffman,* supra; *Railroad* v. *Todd,* 58 Tenn. (11 Heisk.), 556; A. & E. Ency. of Law, 1116, 1128.

The reasons underlying the doctrine of *Lane* v. *Marshall* are sound, and are as follows: (1) That the holder of the legal title may assert his rights in the premises; (2) that the purchaser at the court sale may get a full title; and (3) that the property may bring the better price. See Gibson's Suits in Chy. sec. 882.

Analysis of the reasons above given by Mr. Gibson may not be amiss. In the first place, how is the court to know the quality and extent of the estate of the holder of the legal title, unless he be brought into court as a party? The record may show his estate to be one in fee. His assurance of title may be a deed absolute on its face, yet, in fact, he may not own the fee. The deed may be a mortgage only, when the facts of the transaction between him and the holder of the equitable title are disclosed. Again, as to the extent or quantity of the estate of the holder of the legal title: It may appear on the face of his written evidence of title to be large; that is to say in the case of a mortgage the amount of the indebtedness appearing in the face of the instrument may be large, but the amount of the real indebtedness of the holder of the equitable estate may be very small. The holder of the legal title cannot be bound by the proceedings to subject the equity, in which there is necessarily involved the ascertainment both of the amount and quantity of the estate held by the holder of the legal title, unless that holder be brought before the court as a

King v. Patterson.

party to the cause. In the second place, it is manifest from what has been said that the purchaser of the equity at a sale made by decree of court cannot get a full title both to the legal and the equitable estate, unless the holder of the legal title be brought before the court as a party. In the third place, it is equally manifest that, if the holder of the legal title be brought before the court as a party to the cause, and the quality and extent of his rights and of the rights of the holder of the equitable title be fully disclosed in the proceeding in such way as to bind the holder of the legal title and the holder of the equitable title, the property, when sold, will bring a better price than if all these matters should be left in uncertainty and doubt by failure to make the holder of the legal title a party to the cause.

The cases cited have firmly established in our jurisprudence the doctrine of *Lane* v. *Marshall.* There is nothing in the case at bar to save it from the application of that doctrine, and it results that there is no merit in the first question arising under complainants' assignments of error, and it must be overruled. Nor do we think there was error in the action of the chancellor in the taxation of costs, or in overruling the motion of complainants for leave to make the holder of the legal title a party defendant to the various attachment suits brought by the complainants in the consolidated cause after the rights of other attaching creditors had accrued, when the effect of such action on his part would have been to rob them of the fruits of

129 Tenn. 2

their superior diligence in the race to acquire valid liens. Liberal as our statute of amendments is, it did not authorize the court to disregard the rights of junior attaching creditors, who had acquired a priority of lien in a fair race of diligence.

What we have just said disposes of the third and fourth questions arising under the assignments of error made by complainants.

It is insisted for complainants that the motion to quash the attachments and the exceptions to the report as to priority of liens came too late, and that these objections were waived, and were not made in the proper way. Manifestly there is no merit in this insistence. The defendant attaching creditors were not parties to the separate attachment bills brought by the complainants. The motion to quash and the exceptions to the report were seasonably made in the consolidated cause. The question of the validity of the complainants' attachments was raised in the answer of defendants, and the motion to quash and the exceptions to the report were proper methods of raising the question and calling on the court for its decree thereon.

Of the questions arising on complainants' assignments of error, the only one left undisposed of is the second, which raises the question that the chancellor was in error in dismissing the bill, in so far as it sought a marshaling of assets and securities. On this point, the chancellor's decree recites as follows: "Came the complainants herein and moved the court

to refer this cause to the master to report from the record what properties, both real and personal, have been levied on by each of the complainants in each of the cases herein mentioned and consolidated herewith, that decree may be had under the prayer of the bill to marshal the securities and liens in this and said consolidated causes. This motion having been considered by the court, the court is of the opinion that complainants in the causes are not entitled to said relief prayed in the bill for marshaling said liens and securities, and said motion is accordingly overruled; to which action of the court said complainants making this motion severallly excepted.''

The doctrine of marshaling securities is thus stated in one of our cases: "When one creditor has a security upon two funds, another having a security on one of them may, if necessary to the protection of his security, compel the other to resort to the fund not embraced in it, if it can be done without perjudice to the other creditor or injustice to the common debtor or third person having interest in the fund." *Gilliam et al.* v. *McCormack et al.*, 85 Tenn. (1 Pickle), 610, 4 S. W., 521.

In a later case, *White* v. *Fulghum*, 87 Tenn. (3 Pickle), 282, 10 S. W., 501, the doctrine is again stated as follows: "Where one creditor has a lien upon two funds or two parcels of property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction first out of that fund or property upon which the other

creditor has no lien"—citing Story's Equity Jur., sec. 633; 3 Pomeroy, Eq. Jur., sec. 1414. But it is later in the opinion said that: "While that doctrine is well recognized and far reaching in its effect, it has distinct and plain limitations. It will not be enforced to the prejudice of any creditor or third person, or in such a manner as to do injustice to the holder himself"— citing authorities among which are *Gilliam* v. *McCormack,* supra. One general principle deducible from our cases above referred to and others, and also from the section cited from Mr. Pomeroy, is that the marshaling of assets by a creditor is an equity pure and simple, and, as such, must always yield to a legal right where the two conflict, and this whether the legal right be one existing in another creditor or one existing in the common debtor. The dominance of the legal right over the equity of marshaling was again enforced by this court in *Meek* v. *Thompson,* 99 Tenn. (15 Pickle), 732, 42 S. W., 685. On the same point, see, also, *Whitmore* v. *Roscoe,* 112 Tenn. (4 Cates), 623-636, 85 S. W., 860; *Gwynne* v. *Estes,* 82 Tenn. (14 Lea), 673. And in *Parr* v. *Fumbanks,* 79 Tenn. (11 Lea), 394, there is in the opinion of the court a statement of the doctrine of marshaling taken from Waites' Actions and Defenses, vol. 3, p. 174, as follows: "Where parties, whose legal rights being confined to one fund would fail to obtain satisfaction of their just claim if left to the course of law, equity interferes, in order to afford complete relief, by means of what is called marshaling of assets, which is such an arrangement of the different funds,

under administration, as that they may, as far as possible, without injustice, be applied in satisfaction of the various claims, notwithstanding certain parties have a right to priority of satisfaction out of some one or more of such funds." There is nothing in the above definition in conflict with the doctrine as stated in the other cases, but, in so far as the decision in *Parr* v. *Fumbanks* denied the homestead right, that case was overruled by *White* v. *Fulghum*, 87 Tenn. (3 Pickle) 289, 10 S. W., 501. It was said in *Allen, Trustee,* v. *Gilliland,* 74 Tenn. (6 Lea), 534, that "as between successive attachments, the priority depends upon the actual levy, and the first levy must prevail." Applying the foregoing principles to the case at bar, we are unable to see any error in the holding of the chancellor. The nonresident debtor's entire estate was laid bare to attachment when he abandoned his residence in this state. He was then indebted beyond the value of the estate which he left. No creditor filed a general creditor's bill, but each creditor for himself sought a priority of lien by attachment. If some of his creditors were left behind in the race for priority, they only suffered the fate which they sought to impose on other creditors. Such part of the debtor's estate as has been covered by attachment liens to the extent of its value cannot be subjected by those creditors who were left behind in the race under the doctrine of marshaling because that equity yields to the legal right of prior attachment liens fixed upon that part of the debtor's estate by other creditors, and such part of the debtor's estate as was not so covered by

prior attachment liens of other creditors the complainants to this cause or any creditor left behind in the race for priority had the legal right to fix a lien upon by attachment, and therefore did not need to invoke the doctrine of marshaling. The court sustained the bill in so far as its purpose was to consummate one sale of all the land attached, and in so far as its purpose was to determine in one suit the priorities of attaching creditors. This, we think, is as far as the bill should have been sustained, and, under the bill as thus sustained, we think the court may, upon the remand and by its final decree, administer full relief to all attaching creditors according to the priority of their liens acquired by the several attachments successively levied.

Passing now to a consideration of the points raised by the assignments of error on behalf of the defendants, we dispose of one of these questions by saying, as we have heretofore in this opinion, that we find no error in the chancellor's decree in so far as it provided for the taxation of costs in this cause. The only remaining question made on behalf of the defendant attachment creditors in this consolidated cause is the objection made by them in each of their motions to quash, and in each of their objections to the report of the clerk and master, based upon the ground that each of the bills of complaint of the attaching creditors, was multifarious. There is no merit in this insistence, as it is clearly covered by our statutes. Section 6137 of Shannon's Code provides as follows: "The uniting in one bill of several matters of equity distinct

King v. Patterson.

and unconnected against one defendant, is not multi-fariousness.''

It is insisted for defendants, however, that this statute does not apply to the several attachment suits brought by complainants, for the reason that complainants were, while in a court of equity, really invoking only legal remedies in that court. Even if it be true that the demands on which complainants' attachment suits were based were legal demands, yet our statute (section 6135, Shannon's Code) provides: ''Multifariousness, misjoinder, or nonjoinder of parties, is no sufficient cause for the dismissal of a bill in equity, unless objection is made by motion to dismiss or demurrer.'' No such objection was made in the several attachment suits brought by the complainants, and in this consolidated cause equitable remedies were invoked.

It results that the decree of the chancellor is affirmed, and the cause will be remanded for further proceedings.